**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| KEITH RANIERE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 3:15-CV-0540-M |
| | ) | [LEAD CASE] |
| MICROSOFT CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| KEITH RANIERE, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 3:15-CV-2298-M |
| v. | ) | |
| | ) | JURY TRIAL DEMANDED |
| AT&T CORP. | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

**DEFENDANTS' MOTION TO DISMISS FOR LACK OF STANDING**

# **TABLE OF CONTENTS**

I.  PRELIMINARY STATEMENT ..........................................................................................1

II. FACTUAL BACKGROUND ...........................................................................................3

    A.  Mr. Raniere's Initial Assertions Regarding Ownership of the Patents in Suit ........3

    B.  The Court Permits Mr. Raniere An Opportunity to Show His Standing. ................4

    C.  Mr. Raniere Continues to Equivocate Regarding His Claimed Standing in
        Response to the Defendants' Discovery Requests...................................................5

    D.  Mr. Raniere's New Assertions Based on a 75% Ownership of GTI .......................7

    E.  Mr. Raniere's Declaration And Revised Assertion Based on 100% Ownership of
        GTI..........................................................................................................................9

    F.  The Court Grants Mr. Raniere One More Opportunity to Prove His Standing. ....10

III. LEGAL STANDARDS .................................................................................................11

    A.  Dismissal for Lack of Standing............................................................................11

    B.  Dismissal With Prejudice ....................................................................................12

IV. ARGUMENT ................................................................................................................13

    A.  The Court Should Dismiss This Case For Lack of Standing. ...............................13

        1.  The Documents Produced by Mr. Rubens Fail to Demonstrate a Full or
            Partial Transfer of Ownership Interests to Mr. Raniere............................14

        2.  Mr. Raniere's Declaration Does Not Prove That He Owned A Sufficient
            Interest in GTI to Enable Him To Transfer the Patents in Suit To Himself.16

    B.  Mr. Raniere's Complaint Should be Dismissed *With Prejudice*...........................18

V.  CONCLUSION..............................................................................................................20

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abraxis Bioscience, Inc. v. Navinta LLC,*
    625 F.3d 1359 (Fed. Cir. 2010)............................................................................12

*Baton Rouge Bldg. & Constr. Trades Council AFL CIO v. Jacobs Constructors,*
    *Inc.*, 804 F.2d 879 (5th Cir. 1986) ................................................................13, 19

*Brown v. Oil States Skagit Smatco,*
    664 F.3d 71 (5th Cir. 2011) ...........................................................................13, 20

*Carson v. Isabel Apartments, Inc.,*
    579 P.2d 1027 (1978)............................................................................................17

*Guajardo v. Air Exp. Int'l, USA, Inc.,* No. 3:12-CV-815-L, 2012 WL 2886672
    (N.D. Tex. July 16, 2012) (Lindsay, J.) ........................................................13, 19

*MDPhysicians & Assoc., Inc. v. State Bd. of Ins.,*
    957 F.2d 178 (5th Cir. 1992) ..........................................................................12, 19

*Millan v. USAA Gen. Indem. Co.,*
    546 F.3d 321 (5th Cir. 2008) ...............................................................................13

*Resonant Sensors Inc. v. SRU Biosystems, Inc.,*
    651 F. Supp. 2d 562 (N.D. Tex. 2009) (Lynn, J.)...........................................12, 19

*Sicom Sys. Ltd. v. Agilent Techs., Inc.,*
    427 F.3d 971 (Fed. Cir. 2005)...............................................................................14

*Univ. of Pittsburgh v. Varian Med. Sys., Inc.,*
    569 F.3d 1328 (Fed. Cir. 2009).............................................................................13

*Westfall v. Miller,*
    77 F.3d 868 (5th Cir. 1996) .............................................................................12, 19

*Williamson v. Tucker,*
    645 F.2d 404 (5th Cir. 1981) ................................................................................12

**Statutes**

35 U.S.C. § 315.................................................................................................................20

RCW 23A.24.020..............................................................................................................17

ii

RCW 23B.07.040...................................................................................................................16

RCW 23B.07.040(1)(a)(ii)............................................................................................9, 16, 17

RCW 23B.08.030...................................................................................................................16

RCW 23B.08.080...................................................................................................................16

RCW 23B.16.010...................................................................................................................18

**Other Authorities**

Fed. R. Civ. P. 33(b)(3)............................................................................................................6

## I.      PRELIMINARY STATEMENT

Nearly one-year after filing his Complaint, Mr. Raniere still cannot meet his jurisdictional burden to demonstrate that he held enforceable title to the patents in suit when he filed this action.  The Court should dismiss this case with prejudice because Mr. Raniere lacks standing and as a sanction for his dilatory conduct and stubborn resistance to the Court's order to demonstrate his standing.

Mr. Raniere has modified his position with the Court at least four times regarding his alleged ownership of the patents in suit, thereby confusing what should be a simple and threshold issue of standing:

- In December 2014, Mr. Raniere tried to assign the patents to himself while asserting that "at all times prior to dissolution, upon dissolution, and at all times subsequent to dissolution [he] was the sole shareholder of all stock in [GTI]." ECF No. 80 at 3.[1]  Accordingly, on February 16, 2015, Mr. Raniere filed this infringement suit alleging that he is the "owner . . . with all substantial rights in and to" the patents in suit.[2]

- On October 12, 2015, and in response to the Court's Order to Show Cause that Mr. Raniere owned the relevant patents, Mr. Raniere stated—with noticeable equivocation—that Mr. Raniere "appears to have executed a series of documents that, *if effective*, would have transferred ownership of the patents to [Plaintiff] from [GTI] on December 26, 2014."  ECF No. 80 at 1 (emphasis added).  Mr. Raniere's submission to the Court further stated that he was "in the process of trying to determine whether or not those documents were effective."  *Id.*[3]

---

[1] Further demonstrating that Mr. Raniere is playing fast and loose with the Court regarding his ownership interests, Mr. Raniere produced to Defendants a sworn affidavit dated August 2003 from another lawsuit acknowledging that he "gave shares in this company [that owned the patents] to some of my key employees" which is plainly inconsistent with his later representations that he owned all of GTI "at all times."  Ex. 5 at A107-108 (¶¶ 32-33).

[2] *See* ECF No. 1 (Original Complaint) at ¶¶ 9, 11, 13, 15, 17; *see also* ECF No. 48 (Amended Complaint against Microsoft) at ¶¶ 8, 9; and Case No. 3:15-cv-02298, ECF No. 1 (Complaint against AT&T) at ¶¶ 8, 10, 12, 14, 16.

[3] Mr. Raniere's uncertainty regarding ownership continued in his November 30 and December 1, 2015, response to AT&T's and Microsoft's interrogatories, respectively.  Therein he stated equivocally that the December 26, 2014 purported assignment of the patents in suit from GTI to Mr. Raniere was valid "*[a]ssuming valid execution of the" documents* purportedly electing Mr. Raniere sole director and appointing him President of GTI, and *assuming Mr. Raniere was "validly acting as an agent of GTI*."  Ex. 3 at A83 (Resp. to Microsoft Interrog. No. 1(c) (emphasis added)); *see also* Ex. 4 at A92 (Resp. to AT&T Interrog. No. 1(c)); ECF No. 80 at 5 (Dec. 26, 2014, Assignment to

- On January 13, 2016, and in his motion for leave to serve a subpoena, Mr. Raniere abandoned any pretense of being the "sole shareholder" of GTI "at all times." Instead, Mr. Raniere explained that his new counsel had discovered that Alan L. Rubens, the registered agent of GTI, "is in possession of an executed shareholder agreement providing for a transfer of *a majority interest* in Global Technologies, Inc. to Plaintiff, which *may* validate the documents previously produced by Plaintiff to demonstrate his ownership of the patent at issue." ECF No. 105 at 2 (emphasis added). Mr. Raniere explained that "[t]he shareholders' agreement transferring a 75% interest in GTI to Mr. Raniere, if it indeed exists as Mr. Rubens claims, is material to Mr. Raniere's effort to show that he owns the patents." ECF No. 105 at 2-3.

- Four days later and promptly after Defendants cautioned that 75% ownership was insufficient to effect the purported transfer of title, Mr. Raniere apparently discovered that he owned more shares—now claiming, in response to AT&T's motion for an order to show cause, that the other two shareholders "previously told [Mr. Raniere], in substance, that they had no further interest in GTI and that [Mr. Raniere] could have it." ECF 112-6, Ex. F at ¶ 7.

By permitting Mr. Raniere to subpoena documents from Mr. Rubens, the Court gave Mr. Raniere yet another chance to prove his ownership interest in GTI and the patents in suit. Far from demonstrating that Mr. Raniere is the sole shareholder in GTI and owner of the relevant patents, Mr. Rubens' files include documents whereby Toni Natalie, Thomas Delaney, and Steve Danzig identify themselves, *and only themselves*, as "all of the officers, directors and Shareholders" of GTI. Ex. 2 at A27-29. The only document mentioning a potential transfer of shares to Mr. Raniere is an agreement that authorized "*the future sale* and/or transfer of stock interests in the foregoing corporations by TONI NATALIE to KEITH RANIERE" for the stated reason that Ms. Natalie "may wish to sell or otherwise assign or transfer her interest in the foregoing corporations to KEITH RANIERE *at some time in the future*." Ex. 2 at A55-59 (emphasis added). There is no evidence that Ms. Natalie ever transferred those shares to Mr.

---

Keith Raniere ("at all times prior to dissolution, upon dissolution, and at all times subsequent to dissolution I was the sole shareholder of all stock in [GTI].")). Similar to his statement responding to the Court's Order to Show Cause, Mr. Raniere notes that he is still "in the process of attempting to locate and obtain copies of documents relating to ownership of GTI." Ex. 3 at A82; Ex. 4 at A91.

Raniere, and Mr. Raniere never alleges in his declaration that she did.  Moreover, even if the Court were to accept Mr. Raniere's conclusory assertions that Messrs. Delaney and Danzig told him that "[he] could have [their shares in GTI]" (and it should not), Mr. Raniere's declaration, at best, establishes a 25% ownership interest in GTI.  Such a minority interest would be insufficient to amend GTI's Bylaws, elect himself director, or transfer the patents in suit from GTI to himself, whether he followed the corporate statutes and Bylaws or not.

In fact, the evidence shows that Mr. Raniere has no ownership of GTI at all.  And even ignoring his lack of evidence, his inconsistent stories about how he supposedly owns GTI do not show on their face that he owns the patents in suit.  A 75% ownership interest in GTI would not allow Mr. Raniere to appoint himself a director in order to transfer the patents to himself.  A 25% interest in GTI would not make him a majority shareholder and certainly would not have allowed Mr. Raniere to assign himself the patents in suit.  Incredibly, the only way Mr. Raniere can claim that he owns the patents in suit is to ask the Court to believe that he owns 75% of GTI from Ms. Natalie, 12.5% of GTI from Mr. Delaney, and 12.5% of GTI from Mr. Danzig, even though there is zero documentary evidence of any of the three purported transfers and such a claim contradicts both his own earlier statements and the documentary record, including GTI's corporate records.

The Court should see Mr. Raniere's conduct regarding ownership interests for what it is—a shell game wherein Mr. Raniere offers a multitude of inconsistent theories, all of which, fail to demonstrate his standing to bring this suit.  This lawsuit should be dismissed with prejudice.

## II.     FACTUAL BACKGROUND

### A.     Mr. Raniere's Initial Assertions Regarding Ownership of the Patents in Suit

Mr. Raniere filed this lawsuit nearly a year ago alleging in the Complaint that he is the "owner . . . with all substantial rights in and to" the patents in suit.  *See* ECF No. 1 at ¶¶ 9, 11,

13, 15, 17; *see also* ECF No. 48 at ¶¶ 8, 9; and Case No. 3:15-cv-02298, ECF No. 1 at ¶¶ 8, 10, 12, 14, 16.  In April 2015, Counsel for Microsoft advised Mr. Raniere's counsel that the U.S. Patent Office's records indicated that GTI, not Mr. Raniere, owned the patents in suit.  Ex. 6[4] at A121; *see also* Ex. 7 at A124-133 (abstracts of title for patents in suit from PTO).

Counsel for Mr. Raniere responded by forwarding a document executed by Mr. Raniere purportedly assigning the patents in suit from GTI to himself.  Ex. 6 at A120.  He subsequently produced the original assignment from the inventors to GTI and a series of documents purporting to grant him the authority to make this transfer.  *See* ECF No. 80 at 5.[5]  His subsequent production includes three papers that Mr. Raniere executed on December 26, 2014, in which he purports (1) to amend GTI's Bylaws so that its Board of Directors consists of one director and to elect himself as that sole director, (*id.* at 3); (2) to appoint himself President of GTI with authority to transfer the patents in suit to himself, (*id.* at 4); and (3) to assign the patents in suit to himself (*id.* at 5).  In these documents, Mr. Raniere states that "***at all times*** prior to dissolution, upon dissolution, and ***at all times*** subsequent to dissolution [he] was the ***sole shareholder*** of all stock in [GTI]."  *Id.* at 3 (emphasis added).

Because there was no evidence that Mr. Raniere held such an interest in GTI, Defendants pled lack of standing in their respective Answers.  *See* ECF No. 48 at 6; ECF No. 59 at 9.

### B.   The Court Permits Mr. Raniere An Opportunity to Show His Standing.

At the Rule 16 Conference, the Court questioned Mr. Raniere's counsel concerning his requisite standing and subsequently ordered Mr. Raniere to produce to the Court and parties "all

---

[4] All exhibits cited herein are included in a self-contained appendix in accordance with L.R. 7.1(i) filed concurrently herewith and supported by the Declaration of David T. DeZern included as Exhibit 1 in that appendix.

[5] These documents were subsequently provided to the Court at ECF No. 80 at 3-10.

documents that Plaintiff contends establish his ownership interest in the asserted patents" by October 12, 2015.  ECF No. 77.  In response to the Court's order, Mr. Raniere recycled the four previously-produced documents discussed above and produced no other documents to show his ownership.  ECF No. 80.

And as of October 12, 2015, Mr. Raniere admitted he was unsure of his ownership.  In his cover letter to the Court, Mr. Raniere's then-counsel stated equivocally that Mr. Raniere "appears to have executed a series of documents that, *if effective*, would have transferred ownership of the patents to Plaintiff from [GTI] on December 26, 2014."  ECF No. 80 at 1 (emphasis added).  Mr. Raniere's counsel further stated that, eight months after the filing of the complaint, Mr. Raniere was "in the process of trying to determine whether or not those documents were effective."  *Id*.

### C.    Mr. Raniere Continues to Equivocate Regarding His Claimed Standing in Response to the Defendants' Discovery Requests.

After reviewing Mr. Raniere's submission, the Court "determine[d] that the Defendants are entitled to conduct discovery into Plaintiff's standing to bring this lawsuit."  ECF No. 81.  Microsoft and AT&T each served interrogatories and document requests on Mr. Raniere to determine what, if any, basis he had to assert ownership of the patents in suit.[6]

Mr. Raniere responded to AT&T's interrogatories on November 30, 2015, and to Microsoft's interrogatories on December 1, 2015.  Mr. Raniere verified these interrogatory responses, the equivalent of answering under oath.  *See* Fed. R. Civ. P. 33(b)(3) ("Each

---

[6] Microsoft and AT&T each also noticed a deposition of Mr. Raniere.  The deposition was initially postponed to accommodate Mr. Raniere's personal issues and his proposal to dismiss this case with prejudice.  It was subsequently postponed after Mr. Raniere expressed his intent to seek additional documents that Defendants might want to question Mr. Raniere about.  *See* ECF No. 115, Ex. 3 at A14 *and* Ex. 4 at A19.  Based upon the lack of meaningful evidence of standing in the production from Mr. Rubens, Defendants indicated that, based on the record, they will not depose Mr. Raniere before filing this motion.  *See* ECF No. 129.

interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath.").  Mr. Raniere responded to Defendants' discovery requests with shocking uncertainty about whether the December 26, 2014 purported assignment of the patents in suit from GTI to Mr. Raniere was valid.  Ex. 3 at A83 (Resp. to Microsoft Interrog. No. 1(c)) ("[a]ssuming valid execution of the" documents purportedly electing Mr. Raniere sole director and appointing him President of GTI and assuming Mr. Raniere was "validly acting as an agent of GTI."); *see also* Ex. 4 at A92 (Resp. to AT&T Interrog. No. 1(c)); ECF No. 80 at 5.  Mr. Raniere, moreover, made no definitive representations about the validity of the document purportedly amending GTI's Bylaws and electing himself as sole director, opting instead to refer to unidentified shareholder agreements that "may have commenced and been accomplished" and transfer of stock that "may not have occurred, and if it occurred may not have been valid."  Ex. 3 at A82 (Resp. to Microsoft Interrog. No. 1(a)); Ex. 4 at A92 (Resp. to AT&T Interrog. No. 1(a)); ECF No. 80 at 3.  Mr. Raniere's interrogatory responses also note that he still is "in the process of attempting to locate and obtain copies of documents relating to ownership of GTI."  Ex. 3 at A82; Ex. 4 at A91.

And in response to one of AT&T's interrogatories, and contradicting his prior statement that "at all times prior to dissolution, upon dissolution, and at all times subsequent to dissolution [Mr. Raniere] was the sole shareholder of all stock in [GTI]" (ECF No. 80 at 3), Mr. Raniere admitted that he did not own all of GTI "at all times": "Persons who may have had or may have a financial interest in Global Technologies include: Keith Raniere, Thomas Delaney, Steve Danzig, Saul Miodownik, Crosspoint Communications, Inc., and Innovative Science, Inc."  Ex. 4 at A94.  Interestingly, Mr. Raniere's interrogatory response did not even include Ms. Natalie, who the documents show was at least the original majority shareholder of GTI.

In his interrogatory responses, Mr. Raniere also admitted that the purported patent assignment from GTI to himself depended entirely on the validity of the document where he purportedly amended GTI's Bylaws and elected himself as the sole director.  *See* Ex. 3 at A83 (Resp. to Microsoft Interrog. No. 1(b) & (c)); Ex. 4 (Resp. to AT&T Interrog. No. 1(b) & (c)); ECF No. 80 at A92-93.  As noted above, he provided no documentary evidence (or any evidence) to support that validity.

Unable to meet his burden to demonstrate that he owns the patents in suit, on December 2, 2015, Mr. Raniere's counsel indicated to Microsoft and AT&T that he expected Mr. Raniere to dismiss the suit voluntarily with prejudice, and, as of at least December 22, 2015, the parties were in the process of negotiating the terms of that dismissal.[7]  *See* ECF No. 92 at 2.

### D.      Mr. Raniere's New Assertions Based on a 75% Ownership of GTI

In January 2016, Mr. Raniere appears to have suddenly decided to investigate his ownership of the patents in suit, ***something he was required to do before filing this lawsuit***.  At that time, Mr. Raniere's new attorney, Mr. Crockett, called Mr. Alan Rubens, the attorney designated as the registered agent in GTI's Articles of Incorporation.  ECF No. 112-5, Ex. E at ¶¶ 3-5; *see also* ECF No. 97 at 3 (citing Raniere_AT&T0001448-1455) and Ex. 1-J (Raniere_AT&T0001448-1455).  In his declaration, Mr. Crockett swore that Mr. Rubens informed him that "he had a fully-executed shareholder agreement wherein the above-named shareholders agreed to transfer [Toni] Natalie's interest to Raniere, executed in the 1990s."  ECF

---

[7] As to AT&T, Plaintiff and AT&T had agreed to dismissal with prejudice and were "in the process of finalizing the appropriate papers for filing with the Court."  *See* ECF Nos. 92, 97, and 117.  Microsoft had received a similar offer to dismiss with prejudice and was in the process of seeking further assurances that Mr. Raniere would not attempt to circumvent the prejudicial nature of such a dismissal.

No. 112-5, Ex. E at ¶ 6.  Notably, Mr. Rubens's documents have subsequently shown this statement to be incorrect.  *See* Ex. 2 at A55-59.

Based on this understanding of Mr. Rubens's documents, Mr. Raniere presented yet another theory of ownership in communications with Defendants' counsel and in his motion to serve the subpoena.  Mr. Raniere abandoned any pretense of being the "sole shareholder" of GTI "at all times."  Rather, Mr. Raniere instead contended that Mr. Rubens "is in possession of an executed shareholder agreement providing for a transfer of *a **majority interest*** in Global Technologies, Inc. to Plaintiff, which may validate the documents previously produced by Plaintiff to demonstrate his ownership of the patent at issue."  ECF No. 105 at 2 (emphasis added).  Mr. Raniere contended that "[t]he shareholders' agreement transferring a 75% interest in GTI to Mr. Raniere, if it indeed exists as Mr. Rubens claims, is material to Mr. Raniere's effort to show that he owns the patents" and "[i]t closes the gap between" GTI's ownership of the patent and the alleged transfer to Mr. Raniere.  ECF No. 105 at 2-3.  Mr. Raniere went on to argue that the 75% ownership interest in GTI would purportedly have allowed him to transfer the patents in suit to himself.  ECF No. 105 at 3-5.

Defendants explained to counsel for Mr. Raniere that the Revised Code of Washington did not permit Mr. Raniere to elect himself sole director and assign the patents in suit to himself with just a 75% interest in GTI, assuming he had such an interest.  *See* ECF No. 114 at 6-8.  Specifically, RCW[8] 23B.07.040(1)(a)(ii) does not permit action without a meeting by less than all shareholders unless "at the time the corporate action is approved the corporation is not a public company ***and is authorized to approve such corporate action under this subsection***

---

[8] "RCW" refers to the Revised Code of Washington.  GTI is a Washington corporation, and the Revised Code of Washington governs its corporate actions.  *See* ECF No. 105 at 3.  The full text of any section of the Revised Code of Washington cited herein is provided in Ex. 9 at A157-162.

***(1)(a)(ii) by a general or limited authorization contained in its articles of incorporation***." *See* Ex. 9 at A159 (RCW 23B.07.040(1)(a)(ii)) (emphasis added).  GTI's Articles of Incorporation do not include any such authorization for action without a meeting.  *See* ECF No. 115, Ex. 7; (GTI Articles of Incorporation).  Moreover, GTI's Bylaws expressly prohibit such action without a meeting.  *See* Ex. 2 at A10-13(same).

Because of this ownership theory, Mr. Raniere apparently changed his mind about dismissing this case with prejudice, and on January 13, 2015, served Defendants with notice of subpoena to Mr. Rubens.  *See* ECF No. 114 at 6; *see also* ECF No. 115, Ex. 3.  Defendants objected because the Court's Order only permitted Defendants to conduct discovery of Mr. Raniere's alleged standing, not Mr. Raniere.  ECF No. 81.

### E.      Mr. Raniere's Declaration And Revised Assertion Based on 100% Ownership of GTI.

Four days after filing his motion alleging his 75% interest (and no more) in GTI, Mr. Raniere submitted a declaration in response to AT&T's motion for an order to show cause.  *See* ECF No. 111; ECF No. 112-6, Ex. F.  In that declaration, Mr. Raniere provided his apparently recent discovery that, in addition to the 75% ownership of GTI that the Rubens documents would supposedly provide him, he also owned the other 25% of GTI through an oral transfer from Messrs. Delaney and Danzig of their collective 25% ownership in GTI.  Mr. Raniere swore, for the first time, that the remaining shareholders of the 25% interest in GTI "previously told [Mr. Raniere], in substance, that they had no further interest in GTI and that [Mr. Raneire] could have it."  *Id*. at ¶ 7.  Mr. Raniere cited no documentary proof for this last assertion, and none has been provided.

In his declaration, Mr. Raniere also asserted that he "invested more than $75,000 into continuing the patent."  *Id*.  Presumably, this amount refers to the cost of prosecuting the patents

in suit (*i.e.*, obtaining the patents through the Patent Office).  Characteristically, Mr. Raniere

produced no documentary evidence that he paid for the prosecution of the patents in suit or

otherwise provided any money to GTI.  Indeed, documents produced appear to demonstrate the

opposite, as the only documents Mr. Raniere produced regarding payments related to the patents

in suit ***show payments from National Health Network, Inc. and First Principles, not Mr.***

***Raniere***.  Ex. 11 at A180-182; Ex. 12 at A177-179; *see also* Ex. 1 at A3, ¶10.

    **F.**    **The Court Grants Mr. Raniere One More Opportunity to Prove His Standing.**

In its hearing and status conference on February 3, 2015, the Court again expressed

frustration at Mr. Raniere's delay in meeting his threshold burden on standing: "It's been a year,

and I haven't seen it.  And if you think what has been submitted so far does the job, I disagree."

Ex. 8, 2/3/2016 Hr. at 12:12-14.  Mr. Raniere's counsel contended that Mr. Rubens's document

would finally demonstrate standing.  *See, e.g.*, ECF No. 111 at 1 ("Mr. Rubens' files show, or

will show, that Mr. Raniere had corporate authority dating from the 1990s to transfer the patents-

in-suit from a corporation to himself."); *see also* Ex. 8, 2/3/2016 Hr. at 11:21-12:1 ("But with the

disclosure of the Rubens documents – and what Mr. Rubens has told me when I interviewed him,

Mr. Raniere is plainly sure that he had more than enough controlling interest in the corporation

to issue himself an assignment prior to the commencement of this case.").  Accordingly, the

Court permitted Mr. Raniere one more "opportunity to get from [Mr. Rubens] what, if anything,

he has."  *Id*. at 5:6-9; *see also* ECF No. 124 (order for production of Mr. Rubens's documents).

In a letter dated February 4, 2015, Mr. Rubens produced documents to the parties.  *See*

Ex. 2 (A6-78).  According to Mr. Rubens's cover letter he included "all of the documents that I

have in my possession with respect to Global Technologies, Inc."  *Id*. at A6.

Contrary to Mr. Raniere's representations regarding the content of the documents to be produced by Mr. Rubens, the documents produced by Mr. Rubens do not support any of Mr. Raniere's inconsistent ownership theories or the statements in his declaration.[9]

## III.   LEGAL STANDARDS

### A.   Dismissal for Lack of Standing

"Standing is a jurisdictional requirement in every federal action, and ***must be present at the time the suit is filed***; the party bringing suit bears the burden of showing that it has standing." *Resonant Sensors Inc. v. SRU Biosystems, Inc.*, 651 F. Supp. 2d 562, 568 (N.D. Tex. 2009) (Lynn, J.) (emphasis added) (citing *Sicom Sys. Ltd. v. Agilent Techs., Inc.*, 427 F.3d 971, 975-76 (Fed. Cir. 2005)).  "[I]n a patent infringement action, 'the plaintiff must demonstrate that it held enforceable title to the patent ***at the inception of the lawsuit***' to assert standing." *Abraxis Bioscience, Inc. v. Navinta LLC*, 625 F.3d 1359, 1364 (Fed. Cir. 2010) (emphasis added) (citations omitted).

When considering a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), "the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *MDPhysicians & Assoc., Inc. v. State Bd. of Ins.*, 957 F.2d 178, 181 (5th Cir. 1992) (quoting *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981)); *see also Resonant Sensors Inc.*, 651 F. Supp. 2d at 567.  Any factual determinations are reviewed for

---

[9] Late on Wednesday, February 10, 2016, and after the Court had made clear to Mr. Raniere that he was not permitted to engage in any discovery beyond the subpoenaing of Mr. Rubens, Mr. Raniere made another document dump on the Defendants.  Although Mr. Raniere re-produced the documents that had been produced by Mr. Rubens, he included in the production approximately 300 pages of entirely new documents.  These new documents do not appear to have been produced by or from Mr. Rubens or the Rubens' Subpoena, but instead from Mr. Raniere as a new production. Included in the production are certified documents from Washington State and documents from files of a bankruptcy related to one of the shareholders, Ms. Natalie.  The production does nothing to cure the glaring omission of ownership evidence made even plainer by the production from Mr. Rubens.  And, as the Court is aware, the production violates the Court's instructions limiting discovery by Mr. Raniere to the subpoena on Mr. Rubens and related authentication.  *See* ECF No. 130 at 2.

clear error. *See Williamson*, 645 F.2d at 413 ("[I]f the court has relied . . . on its own

determination of disputed factual issues, we must then review those findings as we would any

other district court resolution of factual disputes-we must accept the district court's findings

unless they are 'clearly erroneous.'"); *see also Abraxis Bioscience, Inc.*, 625 F.3d at 1363 ("To

the extent [any] jurisdictional facts are in dispute, however, the findings of fact are reviewed for

clear error." (emphasis added)) (brackets in original).

### B. Dismissal With Prejudice

Courts in the Fifth Circuit have found dismissal with prejudice appropriate in

circumstances when there is a lack of standing. *See, e.g.*, *Westfall v. Miller,* 77 F.3d 868, 870,

873 (5th Cir. 1996) (affirming dismissal with prejudice where district court found plaintiff "did

not have standing to challenge the certification requirement because he had not exhausted his

certification options prior to filing suit"); *Baton Rouge Bldg. and Constr. Trades Council AFL*

*CIO v. Jacobs Constructors, Inc.,* 804 F.2d 879, 881 (5th Cir. 1986) (affirming dismissal with

prejudice based on lack of standing); *Guajardo v. Air Exp. Int'l, USA, Inc.*, No. 3:12-CV-815-L,

2012 WL 2886672, at *3 (N.D. Tex. July 16, 2012) (Lindsay, J.) (dismissing with prejudice

where plaintiff was limited to intervening in another suit).

A case may also be dismissed with prejudice as a sanction, and "[t]he determination of

whether dismissal with prejudice is an appropriate sanction . . . is a procedural issue not unique

to patent law, and thus, [the Federal Circuit] appl[ies] the law of the regional circuit." *Univ. of*

*Pittsburgh v. Varian Med. Sys., Inc.*, 569 F.3d 1328, 1334 (Fed. Cir. 2009). The imposition of

sanctions is reviewed for an abuse of discretion, and any factual findings underlying the

imposition of sanctions are reviewed for clear error. *Id.*

The Fifth Circuit ordinarily affirms dismissal with prejudice *as a sanction* "only if: (1) there is 'a clear record of delay or contumacious[10] conduct by the plaintiff,' and (2) 'lesser sanctions would not serve the best interests of justice.'" *Brown v. Oil States Skagit Smatco*, 664 F.3d 71, 77 (5th Cir. 2011) (citing *Sturgeon v. Airborne Freight Corp.*, 778 F.2d 1154, 1159 (5th Cir. 1985)).  "[D]ismissal with prejudice [is] a more appropriate sanction when the objectionable conduct is that of the client, and not the attorney."  *Id.* (citing *Brinkmann v. Dallas Cty. Deputy Sheriff Abner*, 813 F.2d 744, 749 (5th Cir. 1987)).

## IV.   ARGUMENT

### A.   The Court Should Dismiss This Case For Lack of Standing.

Mr. Raniere bears the burden of demonstrating that he owns the patents in suit and has standing to bring this suit.  *Sicom Sys. Ltd.*, 427 F.3d at 976.  After receiving multiple opportunities to provide evidence of his standing, the evidence of record is plainly insufficient. Indeed, with or without Mr. Raniere's declaration, there is no evidence that Mr. Raniere owns the patents in suit or has standing to bring this suit.

As an initial matter, the U.S. Patent and Trademark Office's assignment records indicate the patents are assigned to GTI.  *See* Ex. 7 at A123-133 (abstracts of title for patents in suit from PTO).  Mr. Raniere's ownership claim relies on his attempted transfer of the patents in suit from GTI to himself in December 2014.  ECF No. 80 at 3-5.  But Mr. Raniere has not and cannot show that he had any ownership interest in GTI, much less a sufficient interest for this attempted transfer to be effective.  Consequently, based on any of his inconsistent theories of ownership,

---

[10] A clear record of contumacious conduct exists when the plaintiff has deliberately exhibited a "stubborn resistance to authority." *Millan v. USAA Gen. Indem. Co.*, 546 F.3d 321, 327 (5th Cir. 2008) (*quoting McNeal v. Papasan*, 842 F.2d 787, 792 (5th Cir. 1988)).

Mr. Raniere cannot prove ownership of GTI or the patents in suit.  This case should be dismissed.

### 1. The Documents Produced by Mr. Rubens Fail to Demonstrate a Full or Partial Transfer of Ownership Interests to Mr. Raniere.

In recent pleadings and at the February 3 hearing, Mr. Raniere pinned his hopes of establishing standing on the then-expected production of documents from Mr. Rubens.  *See* ECF No. 111 at 1 ("Mr. Rubens' files show, or will show, that Mr. Raniere had corporate authority dating from the 1990s to transfer the patents-in-suit from a corporation to himself."); *see also* Ex. 8 at A145-146, 2/3/2016 Hr. at 11:21-12:1 ("But with the disclosure of the Rubens documents -- and what Mr. Rubens has told me when I interviewed him, Mr. Raniere is plainly sure that he had more than enough controlling interest in the corporation to issue himself an assignment prior to the commencement of this case.").  Specifically, Mr. Raniere claimed that these documents would show that he owned 75% of GTI.  ECF No. 112-6, Ex. F at ¶ 6.  But once Mr. Rubens produced these documents, it was clear that they do not show that Mr. Raniere owns 75% of GTI.  As such, Mr. Raniere's last ditch effort to obtain evidence supporting his claim that he owns any part of GTI, let alone a controlling or complete interest, fails.

The documents produced by Mr. Rubens demonstrate that Ms. Natalie owned 75% of GTI and Messrs. Delaney and Danzig each owned 12.5% of GTI,[11] and none of the documents mention or cite to any ownership interest of Mr. Raniere.  By way of example of some of the documents contradicting an ownership interest by Mr. Raniere, the documents include the following:

---

[11] The documents produced by Mr. Rubens also contradict Mr. Raniere's assertions that he was the ***sole shareholder*** of GTI "***at all times***."

- The Bylaws of Global Technologies, Inc. executed by Toni Natalie, Thomas Delaney, and Steve Danzig, which identify themselves, and only themselves, as "all of the officers, directors and Shareholders" of GTI.  Ex. 2 at A27-29.

- The Minutes of First Meeting of the Board of Directors of GTI providing for the Corporation to issue stock to Natalie, Delaney, and Danzig only.  Ex. 2 at A32.

- The Agreement Confirming Stock Ownership explicitly setting forth ownership interests totaling 100% divided between Natalie, Delaney, and Danzig.  Ex. 2 at A37.

- The Stock Purchase Agreement, providing that "TONI NATALIE, TOM DELANEY, and STEVE DANZIG are the sole Shareholders of" GTI.  Ex. 2 at A42.

- The Stock Purchase Agreement distinguishing between its "Shareholder/Employees" and "Keith Raniere" in the clause regarding the treatment of salaries for purposes of calculating "net profit."  Ex. 2 at A46, ¶9.

- The Stock Subscription Agreements for Natalie, Delaney, and Danzig only.  Ex. 2 at A60-68.

- The Stock Certificates for Natalie, Delaney, and Danzig only. Ex. 2 at A73-78.

The closest document Mr. Raniere may attempt to utilize on ownership is an Agreement Between Shareholders of Global Technologies, Inc., Cross Point Communications, Inc., and Innovative Science, Inc., in which the shareholders of GTI give Ms. Natalie permission for "the *future sale and/or transfer* of stock interests in the foregoing corporations by TONI NATALIE to KEITH RANIERE."  *Id*. at A55 (emphasis added)**.**  In this agreement, Ms. Natalie advises the other shareholders "that she may wish to sell or otherwise assign or transfer her interest in the foregoing corporations to KEITH RANIERE at *some time in the future*."  *Id.* (emphasis added). Although this agreement gave Ms. Natalie permission to transfer her shares to Mr. Raniere if she wished, neither it nor any other document produced by Mr. Rubens demonstrates that Ms. Natalie exercised this permission to transfer any shares in GTI.  Importantly, Mr. Raniere never alleges in his declaration that Ms. Natalie actually transferred her shares to him.

Without any evidence that he owns 75% of GTI, Mr. Raniere's attempt to transfer the patents in suit to himself fails. Without majority ownership, Mr. Raniere's previously stated theories about how he could appoint himself a director and assign the patents in suit to himself fail. *See* ECF No. 105.[12]   Without ownership in the patents, Mr. Raniere lacks standing to bring this suit.

### 2.   Mr. Raniere's Declaration Does Not Prove That He Owned A Sufficient Interest in GTI to Enable Him To Transfer the Patents in Suit To Himself.

In January 2016, nearly a year after filing this suit and after numerous communications to the Court and Defendants where he failed to explain his ownership of GTI or the patents in suit, Mr. Raniere submitted a self-serving declaration, in which he suddenly contends that he owns 25% of GTI via transfer from Messrs. Delaney and Danzig. ECF No. 112-6, Ex. F at ¶ 7 ("Delaney and Danzig previously told me, in substance, that they had no further interest in GTI and that I could have it."). Notably, this declaration does not assert that he owns the 75% of GTI owned by Ms. Natalie, nor does it assert that Ms. Natalie ever transferred any shares to him. *See id.* at ¶ 6 ("I have been told that Washington attorney Alan Rubens has corporate formation documents showing that the shareholding interest of Natalie, Danzig and Delaney were 75

---

[12] Even if Mr. Raniere did own 75% of GTI, he still could not appoint himself a director without a meeting. The Revised Code of Washington governs GTI's corporate actions (*see* ECF No. 105 at 3) and normally, requires a meeting to change directors, which Mr. Raniere does not even allege that he held. *See* RCW 23B.08.030 and RCW 23B.08.080. Although Washington law does allow corporate action without a meeting in certain circumstances, ***none*** of those circumstances apply to GTI in this case. *See* RCW 23B.07.040. For action without a meeting by less than all shareholders, RCW 23B.07.040(1)(a)(ii) requires that "at the time the corporate action is approved the corporation is not a public company and is authorized to approve such corporate action under this subsection (1)(a)(ii) by a general or limited authorization contained in its articles of incorporation." *See* Ex. 9 RCW 23B.07.040(1)(a)(ii) at A158. GTI's Articles of Incorporation do not include any such authorization for action without a meeting. *See* ECF No. 115, Ex. 7 at A51-55 (GTI Articles of Incorporation); *see also* Ex. 2 at A10-13 (same). Indeed, GTI's Bylaws expressly bar such an action. *See* Ex. 2 at A17. In a similar circumstance, the Washington Supreme Court refused to enforce a property transfer from a corporation for failure to comply with the requirements of the Revised Code of Washington and the corporate articles. *See Carson v. Isabel Apartments, Inc.*, 20 Wash. App. 293, 298 (1978) (holding that "attempted sale cannot bind the corporation because the Coxes failed to comply with RCW 23A.24.020 and the corporate articles").

percent/12.5 percent/12.5 percent, and that they had executed a shareholders agreement whereby Natalie would transfer me her shares."). Mr. Raniere's claim that Messrs. Danzig and Delaney transferred their shares to him, even though GTI's corporate records show no such transfer and there are no stock certificates showing his purported ownership, is insufficient to meet his burden on standing.

First, even if the Court were to accept, which it should not, Mr. Raniere's assertions that Messers. Delaney and Danzig told him that "[he] could have [their shares in GTI]" Mr. Ranier's declaration at best establishes a 25% ownership interest in GTI. *Id.* at ¶ 6; *see also* Ex. 2 at A37, A63-68, A75-78 (documents reflecting Messers. Delaney's and Danzig's cumulative 25% interest). Such a minority interest is insufficient to effectuate the December 26, 2014 documents, where Mr. Raniere attempted to amend GTI's Bylaws, elect himself as the sole director, and transfer the patents in suit from GTI to himself.

Second, neither the Revised Code of Washington nor the Bylaws allow such an oral transfer of shares. The Revised Code requires corporations to maintain records of shareholders. *See* RCW 23B.16.010. And GTI's Bylaws require that stock transfers "shall be made ***only*** on the stock transfer books of the Corporation."[13] Ex. 2 at A24 (emphasis added).

Third, Mr. Raniere's story about obtaining Messrs. Delaney and Danzig's shares does not comport with the documentary evidence. GTI's Bylaws require certain documentation to effectuate a share transfer, such as stock records and stock certificates, which do not exist and thereby cast doubt on Mr. Raniere's claim that he obtained any interest in GTI from Delaney and Danzig. *See* ECF No. 112-6, Ex. F at ¶ 7. Specifically, the GTI Bylaws provide:

---

[13] GTI's Certificate for Shares issued to Ms. Natalie, Mr. Delaney, and Mr. Danzig explicitly state that the Certificate for Shares is "transferable only on the books of [GTI] by the holder hereof in person or by Attorney, upon surrender of this Certificate properly endorsed." *See* Ex. 2 at A73, A75, A77.

- Section 6.1 <u>Certificates of Shares</u>: There will be "Certificates representing shares of the Corporation. . . . All certificates surrendered to the Corporation for transfer shall be canceled and no new certificates shall be issued until the former certificates for a like number of shares shall have been surrendered and canceled, except that in case of a lost, destroyed, or mutilated certificate, a new one may be issued therefor upon such terms and indemnity to the Corporation as the Board may prescribe."  Ex. 2 at A24.

- Section 6.2 <u>Transfer of Shares</u>:  "Transfer of shares of the Corporation shall be made ***only on the stock transfer books of the Corporation by the holder of record*** thereof or by his legal representative, who shall furnish proper evidence of authority to transfer . . . .  The person in whose name shares stand on the books of the Corporation shall be deemed by the Corporation to be the owner thereof for all purposes."  Ex. 2 at A24 (emphasis added).

In sum, the Washington Code and GTI's Bylaws undercut Mr. Raniere's claim to own 25% of GTI or to have obtained such shares from Messrs. Delaney or Danzig.  The Court should thus not credit Mr. Raniere's claim that he owns such shares from Messrs. Delaney and Danzig.[14]

### B.   Mr. Raniere's Complaint Should be Dismissed *With Prejudice*.

The Court should dismiss this lawsuit with prejudice because Mr. Raniere has proved, time and again, that he cannot meet his burden to show standing, despite being given multiple opportunities to do so.  *See, e.g., Westfall,* 77 F.3d at 873; *Baton Rouge Bldg. and Constr. Trades Council AFL CIO,* 804 F.2d at 881; *Guajardo,* No. 3:12-CV-815-L, 2012 WL 2886672, at *3.

Additionally, because Mr. Raniere's conduct constitutes sufficient delay and stubborn resistance to authority, dismissal with prejudice as a sanction is more than justified.  Standing requires Mr. Raniere to have owned the patents in suit when he filed his Complaint.  Mr. Raniere

---

[14] Mr. Raniere has argued in prior briefing that Defendants are not allowed to question his ownership claims. *See* ECF No. 105 at 5-7; ECF No. 120 at 2-7 ("Mr. Raniere's declaration is sufficient evidence to allow this case to proceed.").  As this Court is well aware, when it comes to determining this Court's subject matter jurisdiction, the Court "is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *MDPhysicians & Assoc., Inc.,* 957 F.2d at 181; *see also Resonant Sensors Inc.,* 651 F. Supp. 2d at 567.  Particularly given the ever-changing theories adopted by Mr. Raniere in this case, the documentary evidence that contradicts Mr. Raniere's self-serving declaration, and Mr. Raniere's tendency to have his memory "refreshed" only after defects in his current theory are brought to his attention by the Defendants, the Court should accord little to no weight to Mr. Raniere's statements in his declaration.

should have investigated and confirmed his ownership before wasting the Court's resources and forcing Microsoft and AT&T to defend this patent infringement suit. *See* ECF No. 1 at ¶¶ 9, 11, 13, 15, 17; ECF No. 48 at ¶¶ 8, 9; and Case No. 3:15-cv-02298, ECF No. 1 at ¶¶ 8, 10, 12, 14, 16. At a minimum, he should have marshaled such evidence promptly after the Defendants raised the issue and certainly after the Court ordered him to do so. *See* ECF Nos. 77 and 80. Instead, Mr. Raniere equivocated about his ownership interest and led the Court and Defendants to believe he would dismiss this case. *See* ECF No. 92. Then, nearly a year after filing this case, Mr. Raniere's attorney finally decided to investigate ownership by seeking documents from GTI's registered agent, Mr. Rubens. *See* ECF No. 105-4 at ¶ 3 (Mr. Crockett's declaration noting he contacted the Washington Secretary of State's office on January 11, 2016 and Mr. Rubens on January 12, 2016). Mr. Raniere and his counsel then made representations to the Court and Defendants of what Mr. Rubens's documents would show, which was utterly inconsistent with the actual documents produced by Mr. Rubens. ECF No. 111 at 1 ("Mr. Rubens' files show, or will show, that Mr. Raniere had corporate authority dating from the 1990s to transfer the patents-in-suit from a corporation to himself."); *see also* Ex. 8 at A145-146, 2/3/2016 Hr. at 11:21-12:1.

Mr. Raniere has dragged this case out for nearly a year, while running out the deadline for Defendants to seek *Inter Partes* Review[15] of the patents in suit. Further supporting this dismissal with prejudice is that most, if not all, of this conduct appears directly attributable to Mr. Raniere himself, not his various lawyers that have entered appearances only to subsequently withdraw from representation of Mr. Raniere. *Brown*, 664 F.3d at 80 ("Bolstering the court's conclusion is the fact that Brown, and not his attorney, committed the sanctionable conduct,

---

[15] *See* 35 U.S.C. § 315.

which makes the harsh sanction of dismissal with prejudice all the more appropriate"). Mr. Raniere first contended that he had owned all of GTI "at all times." ECF No. 80 at 3. He then offered a multitude of inconsistent ownership theories with no documentary support and further delayed this action by failing to provide any of these theories to the Court until faced with AT&T's motion for an order to show cause. Finally, he also has admitted that he is responsible for leading the Court and Defendants to believe he would dismiss this case. ECF No. 112-6, Ex. F at ¶ 8; ECF No. 92.[16]

Moreover, a lesser sanction than dismissal with prejudice would not serve the interests of justice. It was Mr. Raniere's burden to show standing, and he cannot. Mr. Raniere is already subject to dismissal for this reason and Defendants' forthcoming claim for the fees incurred in defending this suit up to this point. The only additional sanction that the Court can apply to deter such conduct is to dismiss with prejudice. Such a sanction would incentivize other parties to be more forthcoming with the Court regarding their basis for standing, rather than delay the proceeding trying to find facts that might support their standing. It would also prevent Mr. Raniere from trying again, perhaps in another court, to attempt to show his standing.

## V.   CONCLUSION

Mr. Raniere has identified no theory or evidence for the Court to find that he had the authority to transfer the patents in suit to himself or that he is the rightful owner of those patents. Because standing is the plaintiff's burden to show, the Court should find that Mr. Raniere lacks

---

[16] That Mr. Raniere plays fast and loose with the Court is further demonstrated by the demonstratively incorrect statements in his declaration, such as his claim to have paid $75,000 to prosecute the patents when the documentary evidence shows that National Health Network, Inc. and First Principles, not Mr. Raniere, paid that money. ECF No. 111 at 7-8; ECF No. 112-6, Ex. F., ¶ 7; Ex. 12 at A181-182; Ex. 11 at A178-179; *see also* Ex. 1 at A3-4, ¶10.

standing and dismiss this case with prejudice.  Defendants also request any further relief to

which Defendants are justly entitled.

DATED:  February 11, 2016

Respectfully submitted,


SIDLEY AUSTIN LLP


By:      _/ s/Michelle Hartmann_____
         Michelle Hartmann
         mhartmann@sidley.com
         State Bar No. 24032402
         David T. DeZern
         ddezern@sidley.com
         State Bar No. 24059677
         2001 Ross Avenue, Suite 3600
         Dallas, Texas 75201
         Telephone:  (214) 981-3300
         Facsimile:  (214) 981-3400

         Richard A. Cederoth (*pro hac vice*)
         rcederoth@sidley.com
         Douglas I. Lewis (*pro hac vice*)
         dilewis@sidley.com
         Raquel C. Rodriguez (*pro hac vice*)
         1 South Dearborn Street, Suite 900
         Chicago, Illinois 60603
         Telephone: (312) 853-7000
         Facsimile: (312) 853-7036

         **ATTORNEYS FOR MICROSOFT
         CORPORATION**


By:      */s/Christopher W. Kennerly__*

         Christopher W. Kennerly
         Lead Attorney
         Lindsay M. White (*pro hac vice*)
         Evan M. McLean (*pro hac vice*)
         PAUL HASTINGS LLP
         1117 S. California Avenue
         Palo Alto, CA  94304-1106

21

Tel: (650) 320-1800
Fax: (650) 320-1900
chriskennerly@paulhastings.com
lindsaywhite@paulhastings.com
evanmclean@paulhastings.coms


E. Leon Carter
Texas State Bar No. 03914300
John S. Torkelson
Texas State Bar No. 00795154
CARTER SCHOLER-ARNETT
HAMADA & MOCKLER, PLLC
8150 N. Central Expressway, Suite 500
Dallas, Texas 75206
Tel: (214) 550-8188
Fax: (214) 550-8185
lcarter@carterscholer.com
jtorkelson@carterscholer.com


**ATTORNEYS FOR AT&T CORP.**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 11, 2016, the foregoing document was served on all counsel of record through the Court's electronic filing system.

<u>*/s/Michelle Hartmann*</u>

ACTIVE 212752126v.8

23