# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | | |
|---|---|---|
| KEITH RANIERE, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 3:15-CV-0540-M |
| | ) | [LEAD CASE] |
| v. | ) | |
| | ) | |
| MICROSOFT CORPORATION, | ) | |
| | ) | |
| Defendant | ) | |
| | ) | |
| _____ | ) | |
| | ) | |
| KEITH RANIERE, | ) | |
| | ) | Civil Action No. 3-15-CV-2298-M |
| Plaintiff, | ) | |
| | ) | JURY TRIAL DEMANDED |
| v. | ) | |
| | ) | |
| AT&T CORP. | ) | |
| | ) | |
| Defendant | ) | |

## PLAINTIFF'S EMERGENCY MOTION FOR RECONSIDERATION OF ORDER REGARDING SCHEDULE FOR DEFENDANTS' MOTION TO DISMISS

Pursuant to Rule 60 of the Federal Rules of Civil Procedure, Plaintiff Keith Raniere respectfully requests that the Court reconsider its Order of February 11, 2016 at Dkt. No. 130 so as to permit Mr. Raniere to file evidence in opposition of the motion to dismiss. The Order sets a hearing date for Defendants' Motion to Dismiss for March 1, 2016 and prohibits Mr. Raniere from submitting "evidentiary materials not previously submitted, other than the Rubens deposition and documents." Furthermore, the Order

permits only "a single deposition on written questions to attempt to authenticate any documents produced by Mr. Alan Rubens pursuant to ECF No. 124." Dkt. No. 130.  This Order ties the hands of Mr. Raniere so much so that he is prevented from appropriately opposing Defendants' Motion to Dismiss.  While Mr. Raniere would have liked to provide this evidence months ago, his review of the Rubens documents only recently has refreshed his recollection as to the circumstances of his ownership of GTI.

Mr. Raniere's Emergency Motion asks for reconsideration such that the Court permits Mr. Raniere to submit declarations from himself and others as to his standing, permits Mr. Raniere so revise his interrogatory responses, continues the hearing on Defendants' Motion to Dismiss, and order that no further authentication is required for the Rubens documents for purposes of opposing Defendants' Motion to Dismiss.

## I.    OFFER OF PROOF.

If the Court grants the requested reconsideration, Mr. Raniere will offer the following evidence: (1) a declaration from Mr. Raniere (2) updated interrogatory responses, and (3) government certifications of Washington State records and bankruptcy filings already produced to Defendants.

If allowed to submit Mr. Raniere's declaration, it would read substantially as follows:

> 1.    I had the opportunity to review the Rubens documents regarding Global Technologies, Inc. (GTI).  These documents refreshed my recollection as to how the ownership of GTI was eventually transferred to me.  This declaration supplements and adds to my previous declaration at Dkt. No. 112-6.

> 2.    I, along with Thomas Delaney, Saul Miodownik and Steve Danzig invented the patents-in-suit, a teleconferencing process.  On or about February 16, 1995, we filed an application to patent that invention with the United States Patent Office.

3.      Myself along with Mr. Delaney, Ms. Natalie, and Mr. Danzig decided to form a corporation to exploit the pending patent.  We first started with the "Agreement Between Shareholders of Global Technologies, Inc., Cross Point Communications, Inc. and Innovative Science, Inc." dated February 4, 1995 authorizing Toni Natalie to transfer, in the future, her shares in GTI to myself.   A true and correct copy of this document is at Dkt. No. 132, at A55-A59.  I am sufficiently familiar with the signatures of Mr. Delaney, Mr. Miodownik, Ms. Natalie, and Mr. Danzig to say that their signatures are indeed there.

4.      Mr. Delaney, Ms. Natalie, Mr. Danzig and I agreed in February 1995 that Ms. Natalie would own her shares for my benefit.  We also agreed in February 1995 that I would have 100% of the rights to the pending patent in the event the corporation could not exploit the patents.

5.      The reason my signature is on the document at Dkt. No. 132, A55-A59, is because, as we agreed among ourselves (Delaney, Natalie, Danzig and myself) was that I had the right to control the ownership and direction of GTI.

6.      Ms. Natalie was not an inventor of the patents and so had no right to beneficially own the shares in GTI.  At all times since GTI was formed, I had the right to direct and control the ownership of Ms. Natalie's shares.

7.      Ms. Natalie, Mr. Danzig and Mr. Delaney subscribed to a 75%, 12.5% and 12.5% interest in GTI, respectively.  Their subscriptions are shown at Dkt. No. 132, at A60-A68.  I recognize their signatures on these documents.  Prior to seeing the documents by Mr. Alan Rubens I was not sure that I had correctly recalled the percentages of ownership, but seeing the documents and my signature thereon refreshed my recollection.

8.      On February 10, 1995, Mr. Danzig, Ms. Natalie and Mr. Delaney formed GTI as a Washington State corporation.  Their signatures appear on Dkt. No. 132, at A8, which is a true and correct copy of the Initial Annual Report that I understand was filed with Washington's Secretary of State.

9.      A true and correct copy of GTI's Articles of Incorporation are at Dkt. No. 132, at A10-A13.

10.     A true and correct copy of GTI's Bylaws are at Dkt. No. 132, at A16-A29.

11.     Mr. Danzig, Mr. Delaney, Ms. Natalie and myself signed a "Stock Purchase Agreement" at or around February 18, 1995.  A true and correct copy of that document, with their signatures thereon, is at Dkt. No. 132, at A42-A54.  The reason why I signed giving my approval to this document is that the parties understood and agreed that I was the beneficial owner of all of Ms. Natalie's shares.  The parties could not proceed with this agreement without my signature.

12.     The document at Dkt. No. 132, at. A37-A41 is a true and correct copy of an "Agreement Confirming Stock Ownership," dated March 17, 1995 and containing the signatures of Ms. Natalie, Mr. Danzig, Mr. Delaney, Mr. Miodownik, and myself.  Again, the reason my signature appears on this document is that I beneficially owned the majority of GTI's stock and, as paragraph 5 states, I controlled GTI through my beneficial ownership of Natalie's shares.

13.     The "Assignment" at Dkt. No. 112-1 is a true and correct copy of a March 1995 assignment of the pending patents to GTI.  I recognize the signatures thereupon as being that of Mr. Danzig, Mr. Delaney, Mr. Miodownik, and myself.

14.     Before the State of Washington dissolved GTI in 1996, Natalie told me that she transferred her interest in GTI to me.

15.     As it became evident that we could not exploit the patents-in-suit, Delaney and Danzig told me that they were not interested in the effort and that the corporation was mine.  This happened before the patent assignment from GTI to myself at Dkt. No. 112-2.

16.     Because I controlled GTI I assigned the patents-in-suit, owned by GTI, to myself pursuant to the documents at Dkt. No. 112-2.  At that time, my lawyers and I were in conversation with Mr. Danzig's lawyer and provided input to us about that assignment.  Prior to filing this patent infringement suit, I informed Mr. Danzig that I was planning to sue with my full ownership of the patents-in-suit and he also voiced to me no objections to that.

This offer of proof of Mr. Raniere's declaration, if allowed into the record, proves that Mr. Raniere had a 100% interest in GTI and was empowered to execute the patent assignment to himself prior to the initiation of this lawsuit.  This proves standing.  Mr. Raniere is also attempting to solicit additional declarations and documents from nonparties that could shed additional light on the issue.

While Mr. Raniere wishes that he could have submitted this updated declaration and updated interrogatory responses months ago, he only recently had the opportunity to review the Rubens documents that refreshed his recollection.  Since these events transpired more than 20 years ago, it is understandable that Mr. Raniere's memory is less than perfect.  Moreover, the only reason why Mr. Raniere was able to obtain the Rubens documents was due to this Court's order.  Had Mr. Raniere tried to obtain the Rubens documents prior to instituting this lawsuit, he would have been met with the same predicament – Mr. Rubens would ask for a subpoena before producing the documents. Given the circumstances, it is appropriate to allow Mr. Rubens to supplement his own testimony to support his standing.

Mr. Raniere's lawyers have also received certification from the Washington Secretary of State's office he would like to submit which authenticates corporate formation documents of GTI.   He would also like to submit a certified copy of Toni Natalie's bankruptcy files where she does not list in 1999 her ownership of GTI (yet lists ownership in other companies).  As well, Mr. Raniere was about to obtain Alan Ruben's declaration but brought an end to the process when his lawyers received the order prohibiting declarations.  (And, for that reason, this motion is unaccompanied by any declaration.)[1]

---

[1]   The Motion to Dismiss charges Mr. Raniere with contempt of court by doing a "document dump" of additional production materials in spite of this Court's order barring discovery.   On February 10, 2016, Mr. Raniere, made a further document production of certified copies of

## II.   IT IS AN ABUSE OF DISCRETION TO REFUSE EVIDENCE OFFERED TO RESPOND TO A RULE 12(B)(1) MOTION

The Court is requested to reconsider its decision barring Mr. Raniere from presenting any declarations in opposition to the Motion to Dismiss.  Particularly, prohibiting a plaintiff from submitting his own declaration or amending his own interrogatory responses is an abuse of discretion.  Defendants, in their Motion for Entry of Schedule Regarding Motion to Dismiss, at Dkt. No. 129, have cited no precedent that would prohibit the taking of voluntary declarations while there is a stay in effect.

While the Court has considerable discretion in fashioning its stay orders, the stay must be kept within the bounds of moderation, or else the Court's discretion is abused. *See Landis v. N. Am. Co.*, 299 U.S. 248, 256 (1936).  Ignoring available evidence can also be considered an abuse of discretion. *AAA v. AAA Legal Clinic of Jefferson Crooke, P.C.*, 930 F.2d 1117 (5th Cir. 1991) (abuse of discretion to *sua sponte* ignore admission under Rule 36(b), Fed. R. Civ. P.); *Graef v. Chamical Leaman Corp.*, No. 95-40945, 1997 U.S. App. LEXIS 12782 (5th Cir. Feb. 24, 1997) (ignoring arbitrator's interpretation of agreement was abuse of discretion).

Moreover, prohibiting the submission of updated declarations or revised interrogatory responses would violate the Petition Clause's guarantee of access to the courts.  *See, e.g., California Motor Transport Co. v. Trucking Unlimited,* 404 U.S. 508, 511 (1972) (right to petition guarantees the ability to use the courts to advocate their causes); *McDonald v. Smith*, 472 U.S. 479, 484 (1985) (access to the courts is protected

---

documents obtained from the Washington Secretary of State and the United States Bankruptcy Court, as well as an original (previously produced informally) copy of the Rubens documents. Mr. Raniere believes he has a continuing obligation to produce documents and did not believe there was any order barring such.  There was nothing new except certifications from government records-keepers and the complete bankruptcy file.  (Declaration of Robert D. Crockett, offered if permitted to do so.)

by Petition Clause).  Without the ability to submit declarations or amend his interrogatory responses, Mr. Raniere has no substantive access to this Court.

Submitting affidavits and declarations are commonplace and accepted by federal courts even when there is a stay in place.  In *Robertson v. Canterbury Village, Inc.*, 848 F.2d 424, 426 (3rd Cir. 1988), the district court stayed discovery pending resolution of its jurisdiction; nevertheless, the court accepted an affidavit in support of a motion to dismiss.  The same procedure was followed in *Desrosiers v. Hartford Life & Accident Ins. Co.*, 515 F.3d 87, 90 (1st Cir. 2008) (while discovery stay pending, court considered affidavit in support of summary judgment motion).  *See also United States v. Kramer*, 770 F. Supp. 954, 961 (D.N.J. 1991) (formal discovery stayed but informal discovery allowed); *In re Johnson & Johnson Derivative Litigation*, Nos. 10-2033, 11-4993, 11-2511 (FLW), 2013 U.S. Dist. LEXIS 180822 *12-13 (D.N.J. June 13, 2013)(in an October 2010 order, the district court stayed discovery; yet, "informal discovery" was conducted in 2011 pursuant to a confidentiality agreement); *In re New Eng. Compounding Pharm., Inc. Prods. Liab. Litig.*, No. 1:13-md-2419-FDS, 2013 U.S. Dist. LEXIS 120505 *18 (D. Mass. Aug. 15, 2013) (the court's mediation program order, as to discovery, read as follows:  "All discovery in the MDL is stayed . . . until further order of this Court.  Nothing in this paragraph shall prohibit the parties from voluntarily providing documents responsive to subpoenas previously served.")

More troubling is the bar on evidence to rebut the pending motion.  As the motion to dismiss states:  "When considering a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), 'the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case.'  *MDPhysicians & Assoc., Inc. v. State Bd. of Ins.*, 957 F.2d 178, 181 (5th Cir. 1992)."  It would be an abuse of discretion to weigh only movant's evidence and bar respondent's evidence.  A motion to dismiss for lack of standing is either a

"facial attack" or a "factual attack" on the Complaint.  "If a defendant makes a 'factual attack' upon the court's subject matter jurisdiction over the lawsuit, the defendant submits affidavits, testimony, or other evidentiary materials.  In the latter case a plaintiff is also required to submit facts through some evidentiary method and has the burden of proving by a preponderance of the evidence that the trial court does have subject matter jurisdiction." *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981).

In response to a motion to dismiss under Rule 12(b)(1) for lack of standing which in particular, here, Mr. Raniere has now seen the Rubens documents and his recollection of 20-year-old events has been refreshed such that he can provide explanatory testimony about the circumstances of the assignment of the patents-in-suit.  As well, he would like to amend his prior interrogatory responses now that he has the benefit of seeing the Rubens documents.   He has also obtained certifications of government records to produce.  Moreover, had the bar against Mr. Raniere's discovery efforts not have been in place for months, he would have by now, and certainly since Mr. Crockett's appearance, have obtained the deposition testimony of Steven Danzig who refuses to cooperate without a subpoena.   (Crockett Declaration offered as proof, if permitted.)

Mr. Raniere does not contest the right of a trial court to reject offered evidence on a number of grounds:  contrary to prior discovery responses; contrary to deposition testimony; irrelevant, immaterial or hearsay and such.  However, to bar evidence from crossing the threshold of the Court Clerk's office is a different matter, where the Court is a constitutional arm of the federal government put in place to redress wrongs inflicted upon the citizenry.

As mentioned in Mr. Raniere's attorney's letter to Defendants of February 8, 2016 (Tajima Letter at Dkt. No. 129-2), Mr. Raniere was in the process of obtaining declarations to supplement his evidence of standing.  This letter provides Defendants fair warning and the ability to depose anticipated declarants prior to trial:

We are in the process of obtaining an updated declaration from Mr. Raniere in light of his refreshed recollection after having reviewed the Rubens documents. Thus, you may wish to reconsider your decision not to depose him.

We are also attempting to procure a declaration from Steven Danzig and Thomas Delaney, former principals of GTI, to shed further light on the standing issue. We may also ask Mr. Rubens for a declaration to authenticate documents he sent to us.

Obtaining these declarations without resorting to the Court's subpoena power is within Mr. Raniere's rights. It is also to be encouraged as cost-effective informal discovery. *See United States v. Kramer*, 770 F. Supp. at 961 (informal discovery saves "litigation costs associated with formal discovery.")

Finally, it is impracticable to serve Mr. Rubens with written deposition questions because he said he is leaving on vacation. Additionally, Mr. Raniere's offer of proof should provide sufficient authentication.

In conclusion, Mr. Raniere respectfully requests that the Court reconsider its order of February 11, 2016 (Dkt. No. 130) and provide other relief as the Court deems advisable.

DATED: February 12, 2016        Respectfully submitted,

CROCKETT & ASSOCIATES

Robert D. Crockett, Lead Counsel, *pro hac vice*
State Bar No. 105628 [California]
23504 Lyons Avenue, No. 401
Santa Clarita, California 91321
Phone: 323-487-1101
Fax: 323-843-9711
bob@bobcrockettlaw.com

Dan Gus
Gus & Gilbert Law Firm
A Professional Corporation
State Bar No. 24007288
209 E Main Street
Waxahachie, TX 75165
Telephone: (972)330-2775
Facsimile: (214)960-4140
dan@gus-gilbert.com
901 Main Street, Suite 5100

Christopher E. Blank, *pro hac vice*
Jared L. DuJack, *pro hac vice*
Schmeiser, Olsen & Watts
22 Century Hill Drive, Suite 302
Latham, New York 12110
Phone:  518.220.1850
Fax:  518.220.1857
cblank@iplawusa.com
jdujack@iplawusa.com

**ATTORNEYS FOR KEITH RANIERE**

## CERTIFICATE OF SERVICE

I hereby certify that on the 12th day of February 2016, I submitted a true and correct copy of

PLAINTIFF'S EMERGENCY MOTION FOR RECONSIDERATION OF ORDER REGARDING SCHEDULE FOR DEFENDANTS' MOTION TO DISMISS

to the Clerk of the United States District Court, Northern District of Texas, using the CM/ECF system, and served a copy of it on all counsel that have appeared in this case through this Court's electronic filing system.

/s   Chase Tajima
Chase Tajima