IN THE UNITED STATES DISTRICT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| KEITH RANIERE, § | | |
| § | | |
| Plaintiff, § | | |
| § | | |
| v. § | CIVIL NO. 3:15-CV-0540-M | |
| § | | |
| MICROSOFT CORPORATION, § | | |
| § | | |
| Defendant. § | | |

| | | |
|---|---|---|
| KEITH RANIERE, § | | |
| § | | |
| Plaintiff, § | | |
| § | | |
| v. § | CIVIL NO. 3:15-CV-2298-M | |
| § | | |
| AT&T CORP., § | | |
| § | | |
| Defendant. § | | |

## MEMORANDUM OPINION AND ORDER

Before the Court is a joint Motion for Fees and Costs under 35 U.S.C. § 285 [Docket Entry #158], filed by Defendants AT&T Corp. ("AT&T") and Microsoft Corporation ("Microsoft"). For the reasons stated, the Motion is GRANTED.

### Background

Plaintiff Keith Raniere filed separate lawsuits for patent infringement against AT&T and Microsoft, asserting five patents against AT&T, U.S. Patent Numbers: 6,373,936; 6,819,752; 7,215,752; 7,391,856; and 7,844,041, and two of those five patents, the '5752 and

1

the '041, against Microsoft. Defendants challenged Plaintiff's ownership of the asserted patents and pleaded lack of standing as an affirmative defense in their respective answers. The Court also questioned Plaintiff's standing early in the litigation and gave Plaintiff multiple opportunities to establish his ownership interest in the asserted patents. Despite these opportunities, Plaintiff failed to establish that he owns the patents in suit. Further, the Court found that Plaintiff engaged in deliberately misleading conduct to obscure and complicate the standing issue. Accordingly, the Court granted Defendants' Motion to Dismiss for Lack of Standing and dismissed Plaintiff's claims with prejudice.

Defendants seek attorney's fees and costs through an exceptional case finding under 35 U.S.C. § 285. AT&T estimates that its fees and non-taxable costs are $935,300.00; Microsoft estimates that its fees and non-taxable costs are $202,000.00. The Court held a hearing on Defendants' Motion on August 15, 2016. The issues have been fully briefed and argued, and the Motion is ripe for determination.

**Legal Standards**

Section 285 authorizes district courts—"in exceptional cases"—to award reasonable attorney's fees to the prevailing party in patent litigation. 35 U.S.C. § 285. Generally, a "prevailing party" is one that receives at least some relief on merits, which alters the legal relationship of the parties. *Inland Steel Co. v. LTV Steel Co.*, 364 F.3d 1318, 1320 (Fed. Cir. 2004). An "exceptional" case is "simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1756 (2014). Accordingly, a district court may exercise its discretion, in light of the totality of circumstances, to

determine whether a case is exceptional. *Id*. When engaging in an exceptional case determination, a court may consider a non-exclusive list of factors, including: "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Id*. at 1756 n.6 (citing *Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994)). A case that presents either subjective bad faith litigation conduct or exceptionally meritless claims may sufficiently stand out from other cases to warrant a fee award. *Octane Fitness*, 134 S. Ct. at 1757. A party must prove its entitlement to attorney's fees by a preponderance of the evidence. *Id.* at 1758.

The Court also has inherent power to sanction parties that engage in conduct that constitutes fraud on the court or an abuse of the judicial process. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 44–45 (1991); *Crowe v. Smith*, 261 F.3d 558, 563 (5th Cir. 2001). Under its inherent powers, the Court may assess attorney's fees when a party acts in bad faith, vexatiously, wantonly, or for oppressive reasons. *Matta v. May*, 118 F.3d 410, 416 (5th Cir. 1997). The Court must make a specific finding that the sanctioned party acted in bad faith in order to impose such sanctions, and any sanctions awarded under the Court's inherent powers should be the least severe sanctions adequate to accomplish the purpose for which the sanction was imposed. *Topalian v. Ehrman*, 3 F.3d 931, 938 (5th Cir. 1993). This Court's inherent power is not displaced by any rule or statute. *Chambers*, 501 U.S. at 46.

**Analysis**

<u>Request to Delay Ruling Pending Appeal</u>

As an initial matter, Plaintiff asks the Court to delay ruling on Defendants' Motion while the case is on appeal to the Federal Circuit. Plaintiff argues that deferring the issue of

attorney's fees pending appeal will preserve judicial resources because he believes there is "a considerable chance" that the sanction of dismissal with prejudice will be reversed. The Court declines to delay its determination of Plaintiff's liability for Defendants' attorney's fees. *See Lugus IP, LLC v. Volvo Car Corp.*, 2015 WL 1399175, at *3 (D.N.J. Mar. 26, 2015) (concluding the usual course is for courts to consider attorney's fees promptly rather than waiting for the resolution of any appeal); *see also In re Unisys Corp. Retiree Med. Benefits Erisa Litig. Adair*, 2007 WL 4287393 (E.D. Pa. 2007) (noting that "a number of courts have found that a pending appeal, standing alone, is insufficient reason to postpone a fee decision for an indefinite period"). It is most efficient to make that determination now while the facts are fresh in the Court's mind. Also, as set forth below, the outcome of the appeal will not affect the Court's determination that the facts of this case warrant an award of fees under the Court's inherent authority.

## Prevailing Party Status

Plaintiff's claims were dismissed *with prejudice* for lack of standing. *See* Order of Dismissal dated 3/1/2016 [Docket Entry # 149]. A dismissal for lack of standing is ordinarily without prejudice. *Fieldturf, Inc. v. Sw. Recreational Indus.*, 357 F.3d 1266, 1269 (Fed. Cir. 2004). However, a dismissal with prejudice is appropriate where it is plainly unlikely that the plaintiff will be able to cure the standing problem. *See id.*; *Bates v. U.S. Small Bus. Admin.*, 2005 WL 139109, at *1 (N.D. Tex. Jan. 20, 2005) (Godbey, J.) (citing *Baton Rouge Building and Construction Trades Council AFL-CIO v. Jacobs Constructors*, 804 F.2d 879, 881, 884 (5th Cir. 1986) (upholding dismissal with prejudice for lack of standing)). Here, Plaintiff failed to establish his standing to bring the asserted claims for patent infringement after the Court gave him multiple opportunities to do so. None of the evidence produced or arguments

advanced by Plaintiff in support of his alleged standing gave the Court any reason to believe that the problem could be cured.

The Court first considered Defendants' objections to Plaintiff's standing at the Rule 16 Conference held on September 28, 2015. During the conference, Microsoft's counsel explained that Plaintiff and the other inventors of the asserted patents assigned their interests in the patents to Global Technologies, Inc. ("GTI"), a Washington state corporation, in 1995. Although GTI was administratively dissolved in 1996, Plaintiff executed an instrument in December of 2014, on behalf of GTI, as its "sole owner," purportedly transferring the asserted patents to himself. Microsoft's counsel argued that there was no evidence establishing Plaintiff's ownership of GTI, and that if Plaintiff did not own GTI in December of 2014, the purported assignment to Plaintiff would be ineffective, and Plaintiff would not have standing to bring this action. Plaintiff's counsel represented to the Court that ownership of GTI passed "100 percent" to Plaintiff "at some point," and, as sole owner of the corporation, Plaintiff transferred the patents from the corporation to himself. Plaintiff's counsel admitted, however, that his understanding was based on "representations" by Plaintiff and not on his review of any documents. The Court advised the parties that unresolved questions regarding Plaintiff's ownership of GTI raised serious concerns about the threshold issue of Plaintiff's standing to bring this lawsuit and ordered Plaintiff to produce the documents that establish his ownership interest in the asserted patents.

In response to the Court's order, Plaintiff submitted several documents that, "if effective," he maintained would have transferred ownership of the asserted patents from GTI to Plaintiff on December 26, 2014. However, the documents did not indicate that Plaintiff had any ownership interest in GTI at any time or any right to assign the patents from GTI to

himself. In light of Plaintiff's failure to produce evidence of his ownership of GTI, the Court granted Defendants leave to conduct limited discovery into Plaintiff's standing to bring this lawsuit. Defendants suspended their discovery efforts when Plaintiff's counsel indicated to both Defendants that he expected his client to voluntarily dismiss the litigation and the parties began negotiating the terms of dismissal and finalizing the appropriate papers. Given the parties' efforts toward settlement, the Court extended the deadline for completing limited discovery on standing until January 31, 2016.

On January 19, 2016, AT&T filed a Motion for an Order to Show Cause why this action should not be dismissed under Rule 41(b) because Plaintiff refused to finalize the anticipated settlement. AT&T also complained that Plaintiff was seeking third-party discovery via a subpoena when the Court's order authorized discovery only by Defendants. Plaintiff responded that he could produce evidence that establishes his standing to bring this litigation, but he needed permission to serve a subpoena on Alan Rubens, an attorney located in the State of Washington, in order to obtain that evidence. Plaintiff claimed that Mr. Rubens's files "show, or will show" that Plaintiff had corporate authority dating from the 1990s to transfer the patents-in-suit from GTI to himself. At a hearing on AT&T's show cause motion on February 3, 2016, Plaintiff's counsel assured the Court that Plaintiff had standing, owns the asserted patents, and has a valid assignment. He alleged he only needed a subpoena ordering Mr. Rubens to produce the documents.

The Court considered Plaintiff's assurances and ordered Mr. Rubens to produce "all documents relating to Plaintiff's relationship to GTI and any and all other documents that might establish his interest in GTI and the matters that underlie the claims in this case and that would give Mr. Raniere any standing to assert the patents that are asserted here." Order

[Docket Entry # 124] at 1. After reviewing the Rubens documents, Defendants filed a motion to dismiss. Instead of responding directly to the motion to dismiss, Plaintiff filed a motion seeking permission to file additional evidence, in contravention of the Court's prior express ruling that it "will receive no other evidentiary materials not previously submitted, other than the Rubens deposition and documents." Order [Docket Entry # 130].  Plaintiff's proposed additional evidence included (1) new declarations from himself and others on the standing issue, (2) updated interrogatory responses addressing his standing, (3) a certification from the Washington Secretary of State's office to authenticate GTI's corporate formation documents, and (4) a certified copy of bankruptcy filings by Toni Natalie, Plaintiff's former girlfriend, who held an ownership interest in GTI. Plaintiff represented that his new declaration would explain that reviewing the Rubens documents refreshed his recollection as to how the ownership of GTI was transferred to him.  Plaintiff further stated that he was attempting to solicit additional declarations and documents from nonparties that could "shed additional light on the issue [of standing]." Plaintiff sought a continuance to allow more time to procure additional evidence. The Court agreed to accept the Rubens documents and the certification from the Washington Secretary of State's office to authenticate GTI's corporate formation documents, but refused to accept the other evidence.  The Court also declined to hold the record open indefinitely and denied Plaintiff's request for a continuance.

On March 1, 2016, the Court held a hearing on Defendants' motion to dismiss. The Court considered the Rubens documents as well as testimony from Plaintiff himself, which the Court allowed over Defendants' objection. Plaintiff testified that the other inventors had disavowed any interest in GTI and simply told Raniere that he could have their ownership interests. He also testified that his ex-girlfriend had always held her interest in the

7

corporation "in trust" for him, that the trust arrangement was documented by a written "side letter" executed at the same time as the GTI corporate documents, but that he did not have the side letter and did not know where the letter may be. Plaintiff testified that his ex-girlfriend transferred any and all interest she held in trust for him as part of a written settlement agreement consummated in 2000, but that he does not have this document and does not know where it is. He also testified that the document probably does not identify GTI specifically, but claims that omission is not significant because of the broad language transferring "any and all interest" to him.

At the conclusion of the hearing, the Court determined that Plaintiff failed to establish that he owns the patents in suit and granted Defendants' motion to dismiss. The Court fully explained why the evidence offered by Plaintiff was insufficient to establish a valid transfer of ownership in the patents to Plaintiff. Specifically, the Court found the evidence failed to demonstrate that Plaintiff was the sole shareholder of GTI with authority to elect himself as the sole director of the corporation. The Court further found that Plaintiff's testimony contradicted his earlier representations to this Court, including representations made in the "Unanimous Consent Resolution of the Sole Shareholder of GTI," previously submitted to the Court as evidence to establish his standing, wherein Plaintiff represented that he was the sole shareholder of all the stock in GTI "at all times prior to dissolution, and at times subsequent to dissolution." The Court, in its role as fact-finder, concluded that Plaintiff's testimony was wholly incredible and untruthful.

Because Plaintiff failed, when given multiple opportunities, to establish his standing, the Court determined it was unlikely that Plaintiff would ever be able to cure the standing problem. Therefore, the Court dismissed Plaintiff's claims with prejudice. Additionally, the

Court dismissed Plaintiff's claims with prejudice because Plaintiff's conduct, in the Court's view, demonstrated a clear history of delay and contumacious conduct.

A dismissal with prejudice alters the relationship between the parties and is sufficient to confer prevailing party status for purposes of considering a claim for fees under section 285. *See, e.g., Highway Equip Co. v. FECO*, 469 F.3d 1027, 1035 (Fed. Cir. 2006) (dismissal with prejudice under Fed. R. Civ. P. 41(a)(2) has "the necessary judicial imprimatur to constitute a judicially sanctioned change in the legal relationship of the parties, such that the district court properly could entertain [the defendant's] fee claim under 35 U.S.C. § 285"); *see also Power Mosfet Techs., L.L.C. v. Siemens AG*, 378 F.3d 1396, 1416 (Fed. Cir. 2004) ("The dismissal of a claim with prejudice . . . is a judgment on the merits under the law of the Federal Circuit."); *Schwarz v. Folloder*, 767 F.2d 125, 130 (5th Cir. 1985) (holding that dismissal with prejudice gives the defendant the full relief to which he is legally entitled, "is tantamount to a judgment on the merits," and is sufficient to confer prevailing party status on the defendant for purposes of an award of costs). Because the Court dismissed Plaintiff's claims with prejudice, Defendants are prevailing parties under section 285.

Plaintiff disputes that the Court's dismissal for lack of standing with prejudice is sufficient to confer prevailing party status on Defendants. He relies in particular on the Federal Circuit's decision in *University of Pittsburgh v. Varian Medical Systems, Inc.*, 569 F.3d 1328, 1332-33 (Fed. Cir. 2009), which holds that a dismissal for lack of standing is not a determination on the merits, and thus is "generally" without prejudice. *See* Pl. Resp. [Docket Entry #164] at 6-10. Plaintiff ignores, however, that the Federal Circuit also expressly recognized that a dismissal with prejudice may be appropriate in cases where the

9

standing defect cannot be cured or where a party had the chance to cure the defect and failed. *Varian Med. Sys.*, 569 F.3d at 1333. The Federal Circuit further held that a dismissal with prejudice may be a proper sanction in an appropriate case. *Id.* at 1334. Plaintiff does not identify any binding authority that a dismissal with prejudice is not tantamount to a judgment on the merits or that such a dismissal does not bestow prevailing party status on the party in whose favor the judgment was entered. The cases cited by Plaintiff which hold that dismissals *without prejudice* for lack of standing do not confer prevailing party status are inapposite. *See, e.g.*, Pl. Resp. at 7 (citing *HomeSafe Inspection, Inc. v. Hayes*, 2016 WL 867008, at *2 (N.D. Miss. Mar. 2, 2016) (which acknowledges that dismissals *with prejudice* may support labeling a party as prevailing, because such dismissals are treated as adjudications on the merits and alter the legal relationship between the parties)).

<u>Exceptionality</u>

The Court further finds that this case is exceptional because it stands out from others with respect to the unreasonable manner in which it was litigated. Plaintiff's conduct throughout this litigation, culminating in his untruthful testimony at the hearing on the motion to dismiss, demonstrates a pattern of obfuscation and bad faith. Every time Defendants or the Court identified a defect in his standing, Plaintiff responded with a promise that he could produce evidence that would resolve that defect. Those promises never bore out. Despite numerous representations, Plaintiff failed to produce any written document or other credible evidence that he had an interest in GTI that would allow him to transfer the patents to himself. Plaintiff created, and submitted to the Court, a "Unanimous Consent Resolution of the Sole Shareholder of GTI" document that contained false statements of fact regarding his ownership of GTI. Plaintiff's conduct required Defendants to

expend significant resources to oppose Plaintiff's arguments, which the Court now finds were made in bad faith to vexatiously multiply these proceedings and avoid early dismissal. The Court rejects Plaintiff's latest attempts to recharacterize his conduct as mere "zealous pursuit of his good faith claim of ownership." Plaintiff is not simply the hapless victim of overstatement or bad lawyering; he made false and misleading representations to Defendants and the Court that resulted in, among other things, prejudice to Defendants in the form of significant legal fees incurred in defending this action.

Based on the totality of circumstances presented, the Court finds this case is exceptional and that an award of fees and non-taxable costs is warranted under 35 U.S.C. § 285. The Court further finds that Defendants are entitled to recover reasonable attorneys' fees and non-taxable costs incurred from September 28, 2015, the date of the Rule 16 Conference, to March 1, 2016, the date of the Court's Order of Dismissal.

<u>Inherent Authority</u>

Alternatively, the Court finds it appropriate to use its inherent authority to sanction Plaintiff's conduct. Plaintiff acted in bad faith and vexatiously multiplied these proceedings. The Court identified the standing issue as problematic early in the litigation and gave Plaintiff multiple opportunities to address the Court's concerns.  In response to these opportunities to prove his standing—an issue on which he bears the burden—Plaintiff submitted a "Unanimous Consent Resolution of the Sole Shareholder of GTI" that contained false representations and offered testimony under oath, which the Court, in its role as the fact-finder, found wholly incredible and untruthful. From the inception of the litigation, Plaintiff engaged in a pattern of obfuscation, offering inconsistent theories and arguments and promising to produce evidence that never materialized. Plaintiff complicated the Court's

examination of the standing issue in bad faith by submitting the false Consent Resolution document and by failing to correct, at the earliest opportunity, any misstatement upon which the Court was relying to resolve the standing issue. Plaintiff failed to voluntarily dismiss his claims when confronted with the fatal defects in his case and instead forced this Court and Defendants to expend significant resources to resolve the threshold issue of standing. This deplorable conduct constitutes an abuse of the judicial process and warrants an imposition of sanctions under the Court's inherent powers.

Plaintiff's argues that his conduct was not sufficiently egregious to justify the imposition of sanctions under the Court's inherent powers. He contends that his conduct did not rise to the level or contempt or perjury. He insists that he did not disobey any of the Court's Orders, he merely found it impossible to comply. He also characterizes the false representations in the "Unanimous Consent Resolution of the Sole Shareholder of GTI" as "an immaterial lie on an immaterial matter." The Court wholly rejects these trivializations. The Court requires full candor on all matters from the parties who come to it seeking relief. Plaintiff's submission of a document that contained a knowingly false representation constitutes an abuse of the judicial process that warrants sanctions. The Court has considered lesser sanctions, such as an admonishment, and finds that an award of fees is the least severe sanction adequate to deter similar conduct by Plaintiff in the future and to preserve the integrity of the Court.

## CONCLUSION

Defendants' Motion for Attorney's Fees and Costs is GRANTED. Plaintiff is ORDERED to pay Defendants' reasonable attorneys' fees and non-taxable costs incurred from September 28, 2015 to March 1, 2016.

AT&T and Microsoft are each directed to separately submit to Plaintiff's counsel and the Court, no later than September 16, 2016, evidence of their reasonable attorneys' fees and non-taxable costs incurred from September 28, 2015 to March 1, 2016. AT&T and Microsoft may limit their submissions to evidence of the reasonable amount of time spent by their counsel on this matter. The Court will consider whether attorney's fees claimed by AT&T and Microsoft are duplicative of each other, and also take into account that AT&T took the lead on the standing issue. Plaintiff may file a response no later than September 30, 2016.

**SO ORDERED.**

September 2, 2016.

_____
BARBARA M. G. LYNN
CHIEF JUDGE