# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

## NOTICE OF ENTRY OF
## JUDGMENT ACCOMPANIED BY OPINION

### OPINION FILED AND JUDGMENT ENTERED: 04/18/2018

The attached opinion announcing the judgment of the court in your case was filed and judgment was entered on the date indicated above. The mandate will be issued in due course.

Information is also provided about petitions for rehearing and suggestions for rehearing en banc. The questions and answers are those frequently asked and answered by the Clerk's Office.

Costs are taxed against the appellant in favor of the appellees under Rule 39. The party entitled to costs is provided a bill of costs form and an instruction sheet with this notice.

The parties are encouraged to stipulate to the costs. A bill of costs will be presumed correct in the absence of a timely filed objection.

Costs are payable to the party awarded costs. If costs are awarded to the government, they should be paid to the Treasurer of the United States. Where costs are awarded against the government, payment should be made to the person(s) designated under the governing statutes, the court's orders, and the parties' written settlement agreements. In cases between private parties, payment should be made to counsel for the party awarded costs or, if the party is not represented by counsel, to the party pro se. Payment of costs should not be sent to the court. Costs should be paid promptly.

If the court also imposed monetary sanctions, they are payable to the opposing party unless the court's opinion provides otherwise. Sanctions should be paid in the same way as costs.

Regarding exhibits and visual aids: Your attention is directed Fed. R. App. P. 34(g) which states that the clerk may destroy or dispose of the exhibits if counsel does not reclaim them within a reasonable time after the clerk gives notice to remove them. (The clerk deems a reasonable time to be 15 days from the date the final mandate is issued.)

FOR THE COURT

/s/ Peter R. Marksteiner
Peter R. Marksteiner
Clerk of Court

17-1400, 17-1401 - Raniere v. Microsoft Corporation
United States District Court for the Northern District of Texas, Case Nos. 3:15-cv-00540-M, 3:15-cv-02298-M

# United States Court of Appeals for the Federal Circuit

---

**KEITH RANIERE,**

*Plaintiff-Appellant*

**v.**

**MICROSOFT CORPORATION, AT&T CORP.,**

*Defendants-Appellees*

---

2017-1400, 2017-1401

---

Appeals from the United States District Court for the Northern District of Texas in Nos. 3:15-cv-00540-M, 3:15-cv-02298-M, Chief Judge Barbara M.G. Lynn.

---

Decided:  April 18, 2018

---

ROBERT DALE CROCKETT, Crockett & Associates, Santa Clarita, CA, argued for plaintiff-appellant.  Also represented by CHASE TAJIMA, LISA DEARDEN TREPANIER.

STEPHEN BLAKE KINNAIRD, Paul Hastings LLP, Washington, DC, argued for defendants-appellees.  Defendant-appellee AT&T Corp. also represented by IGOR VICTOR TIMOFEYEV; CHRISTOPHER WOOD KENNERLY, Palo Alto, CA.

CONSTANTINE L. TRELA, JR., Sidley Austin LLP, Chicago, IL, for defendant-appellee Microsoft Corporation.

2                          RANIERE v. MICROSOFT CORPORATION

Also represented by RICHARD ALAN CEDEROTH, DOUGLAS
LEWIS; JOSHUA JOHN FOUGERE, Washington, DC.

─────────────────

Before LOURIE, O'MALLEY, and WALLACH, *Circuit Judges*.

O'MALLEY*, Circuit Judge*.

Keith Raniere ("Raniere") appeals from the district
court's decisions awarding attorney fees and costs to
Microsoft Corporation and AT&T Corporation (together,
"Appellees"). *Raniere v. Microsoft Corp.*, Nos. 15-0540 &
15-2298, 2016 WL 4626584 (N.D. Tex. Sept. 2, 2016) (*Fees
Decision*); *Raniere v. Microsoft Corp.*, Nos. 15-0540 & 15-
2298, slip op. (N.D. Tex. Dec. 22, 2016) (J.A. 34–40).
Because the district court did not err in finding that
Appellees are prevailing parties under 35 U.S.C. § 285
(2012), and did not abuse its discretion in awarding
attorney fees and costs under that provision, we affirm.

BACKGROUND

Raniere sued Appellees for patent infringement, as-
serting five patents against AT&T (U.S. Patent Nos.
6,373,936, 6,819,752, 7,215,752 ("the '5752 patent"),
7,391,856, and 7,844,041 ("the '041 patent")) and two of
these five patents against Microsoft (the '5752 patent and
the '041 patent). *Fees Decision*, 2016 WL 4626584, at *1.

In 1995, Raniere and the other named inventors of the
patents at issue assigned all rights in these patents to
Global Technologies, Inc. ("GTI"). *Id.* at *2. Raniere is
not listed on GTI's incorporation documents as an officer,
director, or shareholder.  GTI was administratively dis-
solved in May 1996. *Id.*

In December 2014, Raniere executed a document on
behalf of GTI, claiming to be its "sole owner," that pur-
portedly transferred the asserted patents from GTI to
himself.  *Id.*  Raniere's suits against Appellees identified
himself as the owner of the patents at issue.

RANIERE v. MICROSOFT CORPORATION                3

In 2015, Microsoft moved to dismiss Raniere's suit for lack of standing, noting that the PTO's records indicated that Raniere did not own the patents at issue. Raniere's counsel represented to the district court that GTI's ownership passed to Raniere in its entirety at some point, and that Raniere properly transferred ownership of the patents from GTI to himself. *Id.* The court ordered Raniere to produce documentation proving these representations. *Id.* Raniere produced various documents that, according to the district court, failed to indicate that Raniere had an ownership interest in GTI at any time or that Raniere had the right to assign the patents at issue from GTI to himself. *Id.* at *3. Given Raniere's failure to produce evidence to support his standing, the district court permitted Appellees to conduct limited discovery into the standing issue and stayed the cases pending its resolution. *Id.*

Appellees suspended discovery when the parties began negotiating terms of settlement, but Raniere refused to finalize the settlement. *Id.* AT&T then filed a motion for an order to show cause why the action should not be dismissed under Federal Rule of Civil Procedure 41(b) for lack of standing. *Id.* AT&T also noted that Raniere was seeking third-party discovery in violation of the district court's discovery order. *Id.* Raniere informed the district court that he could produce evidence to establish his standing, but he required a subpoena to obtain evidence from Alan Rubens, a Washington state attorney. *Id.* The district court permitted this limited discovery request and ordered Rubens to produce all relevant documentation. *Id.* Rubens's documents showed the GTI shareholders' consent to a transfer of shares from Raniere's ex-girlfriend—who owned 75% of GTI's shares—to Raniere. The documents Raniere proffered did not indicate that any such transfer was ever completed, however, and did not establish that Raniere owned the patents at issue.

In light of these documents, Appellees filed a renewed motion to dismiss for lack of standing. *Id.* In response,

4                              RANIERE v. MICROSOFT CORPORATION

Raniere filed a motion seeking the court's permission to submit additional evidence showing that he had sole ownership over GTI. *Id.* The district court granted-in-part and denied-in-part this motion, stating that Raniere had received "more than a fair opportunity to adduce evidence to establish his standing." J.A. 2340.

The district court held a hearing on Appellees' motion to dismiss. *Fees Decision*, 2016 WL 4626584, at *4. Raniere testified, over Appellees' objection, that the other inventors had disavowed any interest in GTI and given their ownership interests to Raniere. *Id.* Raniere also testified that his ex-girlfriend held her shares in the corporation in trust for him, based on a side letter executed between these parties, but he did not have possession of that letter nor did he know where the letter could be. *Id.* The district court found that Raniere's testimony surrounding the alleged transfer contradicted Raniere's earlier representation that the shares had already been transferred to him and was "wholly incredible and untruthful." *Id.*

The district court concluded that Raniere was unlikely to be able to cure the standing defect, and dismissed the case *with prejudice*. *Id.*; J.A. 2362. The district court also stated that it dismissed with prejudice because it found that Raniere's conduct demonstrated "a clear history of delay and contumacious conduct." *Fees Decision*, 2016 WL 4626584, at *4.

Raniere appealed the district court's decision on standing. We summarily affirmed the district court's dismissal with prejudice of Raniere's action for lack of standing. *Raniere v. Microsoft Corp.*, 673 F. App'x 1008 (Fed. Cir. 2017).

While the merits appeal was pending, Appellees filed a motion seeking attorney fees and costs pursuant to 35 U.S.C. § 285. The district court concluded that, because it dismissed Raniere's claims with prejudice, Appel-

RANIERE v. MICROSOFT CORPORATION                    5

lees were prevailing parties for the purposes of § 285.
*Fees Decision*, 2016 WL 4626584, at *4.  Although Raniere
disputed that dismissal for lack of standing with prejudice
was sufficient to confer prevailing-party status on Appel-
lees, the district court explained that "[a] dismissal with
prejudice alters the relationship between the parties and
is sufficient to confer prevailing party status for purposes
of considering a claim for fees under section 285." *Id.*  The
district court also concluded that dismissal with prejudice
is an appropriate remedy where it is unlikely that the
plaintiff will be able to cure the standing defect.  On this
point, the district court explained that it had given Rani-
ere multiple opportunities to cure the identified standing
defect, but "[n]one of the evidence produced or arguments
advanced by [Raniere] in support of his alleged standing
gave the Court any reason to believe that the problem
could be cured." *Id.* at 2.

The district court next concluded that this case was
exceptional because it stood out from other cases "with
respect to the unreasonable manner in which it was
litigated.  [Raniere]'s conduct throughout this litigation,
culminating in his untruthful testimony at the hearing on
the motion to dismiss, demonstrates a pattern of obfusca-
tion and bad faith." *Id.* at *5.  The district court noted
that Raniere promised repeatedly that he could produce
evidence that would cure the standing defect identified by
Appellees and the district court. *Id.*  But Raniere failed to
satisfy these promises, according to the district court, as
"[d]espite numerous representations, [Raniere] failed to
produce any written document or other credible evidence
that he had an interest in GTI that would allow him to
transfer the patents to himself." *Id.*  Raniere's conduct
required Appellees "to expend significant resources to
oppose [Raniere]'s arguments, which the Court now finds
were made in bad faith to vexatiously multiply these
proceedings and avoid early dismissal." *Id.*  The district
court rejected Raniere's attempts to recharacterize his

6                          RANIERE v. MICROSOFT CORPORATION

conduct as "zealous pursuit of his good faith claim of
ownership," noting its finding that Raniere "made false
and misleading representations to Defendants and the
Court that resulted in, among other things, prejudice to
Defendants in the form of significant legal fees incurred
in defending this action." *Id.* The district court awarded
fees and non-taxable costs for the period of time between
the Federal Rule of Civil Procedure 16 conference and the
district court's order of dismissal. *Id.*

In the alternative, the district court sanctioned Rani-
ere's conduct under its inherent authority. *Id.* The
district court reiterated that Raniere had "acted in bad
faith and vexatiously multiplied these proceedings" by
failing to seize on any of the multiple opportunities to
correct the standing issue. *Id.* "From the inception of the
litigation, [Raniere] engaged in a pattern of obfuscation,
offering inconsistent theories and arguments and promis-
ing to produce evidence that never materialized." *Id.* The
district court noted that Raniere failed to voluntarily
dismiss the case when confronted with the fatal standing
defect, instead imposing expenses on both Appellees and
the district court. *Id.* According to the district court,
"[t]his deplorable conduct constitutes an abuse of the
judicial process and warrants an imposition of sanctions
under the Court's inherent powers." *Id.*

Although Raniere argued that his conduct was not
sufficiently egregious to justify imposition of sanctions
under the district court's inherent powers, the district
court rejected Raniere's characterization of his actions,
noting that it "requires full candor on all matters from the
parties who come to it seeking relief. [Raniere]'s submis-
sion of a document that contained a knowingly false
representation constitutes an abuse of the judicial process
that warrants sanctions." *Id.* The district court found
"that an award of fees is the least severe sanction ade-
quate to deter similar conduct by [Raniere] in the future
and to preserve the integrity of the Court." *Id.*

RANIERE v. MICROSOFT CORPORATION                    7

In the order granting attorney fees, the district court directed Appellees to submit evidence of their reasonable fees and costs. *Id.* at *6. AT&T submitted evidence that it incurred $395,050.30 in attorney fees and $13,917.10 in costs, and Microsoft submitted evidence that it incurred $176,166.40 in attorney fees and $2,073.68 in costs. Raniere objected to these figures.

The district court applied the lodestar method to determine the appropriate amount of attorney fees. The district court found that the hourly rates Appellees' counsel charged were reasonable. Although Raniere argued that AT&T improperly redacted its invoices and included unintelligible time entries, thus justifying a lower fee award, the district court found that "[t]he allegedly objectionable time entries are not block billed, or so vague or unintelligible as to prevent meaningful review." J.A. 30. The district court found Appellees were not entitled to fees spent on certain matters after the district court issued its stay order. And, the district court reduced the lodestar for both Appellees by twenty percent due to duplication of efforts between Microsoft and AT&T attorneys. In view of these determinations, the district court awarded $300,295.71 to AT&T and $143,719.26 to Microsoft in attorney fees and costs. J.A. 33.

Raniere appeals the district court's fee award. We have jurisdiction to review this appeal under 28 U.S.C. § 1295(a).

## DISCUSSION

A district court "in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285. An exceptional case, though rare,

> is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable

8                           RANIERE v. MICROSOFT CORPORATION

> manner in which the case was litigated. District
> courts may determine whether a case is "excep-
> tional" in the case-by-case exercise of their discre-
> tion, considering the totality of the circumstances.

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134
S. Ct. 1749, 1756 (2014). As such, "the exceptional-case
determination is to be reviewed only for abuse of discre-
tion." *Highmark Inc. v. Allcare Health Mgmt. Sys., Inc.*,
134 S. Ct. 1744, 1748 (2014). "An abuse of discretion
occurs when a district court's decision commits legal error
or is based on a clearly erroneous assessment of the
evidence." *Univ. of Utah v. Max-Planck-Gesellschaft Zur
Foerderung der Wissenschaften e.V.*, 851 F.3d 1317, 1322
(Fed. Cir. 2017). "A factual finding is clearly erroneous if,
despite some supporting evidence, we are left with the
definite and firm conviction that a mistake has been
made." *Id.* (quoting *Insite Vision Inc. v. Sandoz, Inc.*, 783
F.3d 853, 858 (Fed. Cir. 2015)).

Raniere challenges the district court's decision on four
grounds. First, he contends that the district court erred
in finding that Appellees are prevailing parties under
§ 285. Second, he argues that the district court abused its
discretion in finding this case "exceptional." Third, he
asserts that the district court erred in sanctioning Rani-
ere under its inherent authority, in the alternative to a
fee award under § 285. Finally, he argues that the dis-
trict court abused its discretion in determining the
amount of the fee award.

We conclude that Appellees are prevailing parties,
and that the district court did not abuse its discretion in
finding this case exceptional under § 285 or in its fee
award. We, thus, need not reach the district court's
sanction under its inherent authority in the alternative.

RANIERE v. MICROSOFT CORPORATION                    9

### A.  Appellees Are Prevailing Parties

Raniere first disputes whether Appellees are prevailing parties under § 285.  Raniere contends that dismissal with prejudice for lack of standing is not an adjudication on the merits, as he contends is required to find that a defendant is a "prevailing party" under our case law. Raniere also asserts that dismissal with prejudice, without adjudication of a patent infringement claim, should preclude finding that a defendant has prevailed in a litigation.  We disagree with these statements, particularly in light of the Supreme Court's recent decision in *CRST Van Expedited, Inc. v. EEOC*, which held that a favorable judgment on the merits is not necessary for a defendant to be deemed a prevailing party for purposes of statutory fee-shifting.  136 S. Ct. 1642, 1651 (2016).  Even without *CRST*, we conclude that the district court's dismissal *with prejudice* of Raniere's case for lack of standing is tantamount to a judgment on the merits.  Under either of these rationales, Appellees have in fact prevailed in this case.

The Supreme Court has addressed the issue of what constitutes a "prevailing party" on several occasions.  In *Buckhannon Board & Care Home, Inc. v. West Virginia Department of Health & Human Resources*, 532 U.S. 598 (2001), the Supreme Court rejected the "catalyst" theory for identifying a prevailing party, under which a plaintiff is a "prevailing party" in a lawsuit if it achieves the desired result by bringing about a voluntary change in the defendant's behavior.  There, the Court stated:

> Our "[r]espect for ordinary language requires that a plaintiff receive at least some relief on the merits of his claim before he can be said to prevail."
>
> . . . .
>
> A defendant's voluntary change in conduct, although perhaps accomplishing what the plaintiff sought to achieve by the lawsuit, lacks the neces-

sary judicial *imprimatur* on the change. Our precedents thus counsel against holding that the term "prevailing party" authorizes an award of attorney[] fees *without* a corresponding alteration in the legal relationship of the parties

. . . .

We cannot agree that the term "prevailing party" authorizes federal courts to award attorney[] fees to a plaintiff who, by simply filing a nonfrivolous but nonetheless potentially meritless lawsuit (it will never be determined), has reached the "sought-after destination" without obtaining any judicial relief.

*Id.* at 603–06 (emphasis in original) (quoting *Hewitt v. Helms*, 482 U.S. 755, 760 (1987)).

We have interpreted *Buckhannon* and its application to jurisdictional dismissals in prior cases. We interpreted *Buckhannon* to require that, "[i]n determining whether a party is a prevailing party in patent litigation, we apply the general principle that 'to be a prevailing party, one must receive at least some relief on the merits, which alters . . . the legal relationship of the parties.'" *Inland Steel Co. v. LTV Steel Co.*, 364 F.3d 1318, 1320 (Fed. Cir. 2004) (quoting *Former Emps. of Motorola Ceramic Prods. v. United States*, 336 F.3d 1360, 1364 (Fed. Cir. 2003) (internal quotations omitted)). We clarified later that "'relief on the merits' at least required that the party obtain a court order materially changing the legal relationship of the parties." *Rice Servs., Ltd. v. United States*, 405 F.3d 1017, 1023 (Fed. Cir. 2005) (citing *Buckhannon*, 532 U.S. at 604−05).

Raniere argues that Appellees cannot be prevailing parties because Appellees did not prevail on the merits. In his view, Appellees only "won" a judgment that Raniere did not possess standing to bring his suit, which is merely

RANIERE v. MICROSOFT CORPORATION                    11

jurisdictional.  And, he contends that we have previously made clear that a dismissal for lack of standing is generally to be without prejudice because it is not an adjudication on the merits.  *Univ. of Pittsburgh v. Varian Med. Sys., Inc.*, 569 F.3d 1328, 1332 (Fed. Cir. 2009).  But as noted, the Supreme Court recently clarified *Buckhannon*'s rule in *CRST*, holding that "a defendant need not obtain a favorable judgment on the merits in order to be a 'prevailing party.'"  136 S. Ct. at 1651.

In *CRST*, the Court first summarized its prior precedent on the issue of prevailing parties, noting that the "touchstone of the prevailing party inquiry must be the material alteration of the legal relationship of the parties."  *Id.* at 1646 (quoting *Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 792–93 (1989)).  Acknowledging *Buckhannon*'s requirement that the change in relationship between the parties "must be marked by 'judicial *imprimatur*,'" the Court explained that, "when a plaintiff secures an 'enforceable judgmen[t] on the merits' or a 'court-ordered consent decre[e],' that plaintiff is the prevailing party because he has received a 'judicially sanctioned change in the legal relationship of the parties.'"  *Id.* (alterations in original) (quoting *Buckhannon*, 532 U.S. at 604–05).

The Court explained, though, that, before *CRST*, it had "not set forth in detail how courts should determine whether a defendant has prevailed."  *Id.*  On this point, it concluded that "[c]ommon sense undermines the notion that a defendant cannot 'prevail' unless the relevant disposition is on the merits," and that "[t]he defendant may prevail even if the court's final judgment rejects the plaintiff's claim for a nonmerits reason."  *Id.* at 1651.  This is logical, explained the Court, because "[t]he defendant has . . . fulfilled its primary objective whenever the plaintiff's challenge is rebuffed, irrespective of the precise reason for the court's decision," even if the defendant "might prefer a judgment vindicating its position

12                RANIERE v. MICROSOFT CORPORATION

regarding the substantive merits of the plaintiff's allegations." *Id.*

The Court further noted that, in the context of 42 U.S.C. § 2000e-5(k), the fee-shifting provision of Title VII of the Civil Rights Act of 1964:

> [C]ongressional policy regarding the exercise of district court discretion in the ultimate decision whether to award fees does not distinguish between merits-based and non-merits-based judgments. . . . [O]ne purpose of the fee-shifting provision is to deter the bringing of lawsuits without foundation. . . . The Court, therefore, has interpreted the statute to allow prevailing defendants to recover whenever the plaintiff's "claim was frivolous, unreasonable, or groundless." It would make little sense if Congress' policy of sparing defendants from the costs of *frivolous* litigation[] depended on the distinction between merits-based and non-merits-based frivolity. Congress must have intended that a defendant could recover fees expended in frivolous, unreasonable, or groundless litigation when the case is resolved in the defendant's favor, whether on the merits or not.

*Id.* at 1652 (emphasis in original) (internal quotations and citations omitted).

Although *CRST* considered the fee-shifting provision of Title VII, the Court explained there that "Congress has included the term 'prevailing party' in various fee-shifting statutes, and it has been the Court's approach to interpret the term in a consistent manner." *Id.* at 1646 (citing *Buckhannon*, 532 U.S. at 602–03); *see Buckhannon*, 532 U.S. at 602 ("Congress . . . has authorized the award of attorney[] fees to the 'prevailing party' in numerous statutes in addition to those at issue here."); *Hensley v. Eckerhart*, 461 U.S. 424, 433 n.7 (1983) (holding that

RANIERE v. MICROSOFT CORPORATION                    13

interpretation of "prevailing party" in a case involving the
Civil Rights Attorney's Fees Awards Act of 1976, 42
U.S.C. § 1988, is "generally applicable in all cases in
which Congress has authorized an award of fees to a
'prevailing party'").

Our sister circuits have interpreted *CRST* to mean
that, if a defendant succeeds on a jurisdictional issue, it
may be a prevailing party. The First Circuit recently
examined a similar issue: whether a defendant that
prevailed because plaintiffs failed to demonstrate their
standing can be a "prevailing party" under 17 U.S.C.
§ 505 (2012), the fee-shifting provision of the Copyright
Act. *See Small Justice LLC v. Xcentric Ventures LLC*, 873
F.3d 313 (1st Cir. 2017). The First Circuit concluded that,
under *CRST* and its circuit law, the district court did not
abuse its discretion in awarding fees when that court
"resolved the parties' copyright dispute on standing
grounds without reaching the merits of ownership." *Id.* at
327–28 (internal quotation marks omitted).

Similarly, the Ninth Circuit concluded that *CRST*
overruled its earlier holding in *Branson v. Nott*, 62 F.3d
287 (9th Cir. 1995) that, when a defendant wins based on
a dismissal for lack of subject matter jurisdiction, that
defendant is not a prevailing party under 42 U.S.C.
§ 1988. *Amphastar Pharms. Inc. v. Aventis Pharma SA*,
856 F.3d 696, 710 (9th Cir. 2017). The district court in
the *Amphastar* qui tam case applied *Branson*'s holding,
but the Ninth Circuit panel concluded that, even though
the defendant in the action did not win on the "merits," it
had spent significant time and resources fighting the
lawsuit, and fees should be awarded to deter future
frivolous filings. *Id.* In other words, "[c]ommon sense
says that [the defendant] has won a significant victory

and permanently changed the 'legal relationship of the parties.'" *Id.* (quoting *CRST*, 136 S. Ct. at 1646).[1]

We reach the same conclusion our sister circuits have reached regarding *CRST*, which clarified the application of *Buckhannon* to defendants seeking prevailing-party status. The relevant inquiry post-*CRST*, then, is not limited to whether a defendant prevailed on the merits, but also considers whether the district court's decision— "a judicially sanctioned change in the legal relationship of the parties"—effects or rebuffs a plaintiff's attempt to effect a "material alteration in the legal relationship between the parties." *CRST*, 136 S. Ct. at 1646, 1651. And the same policy rationales the *CRST* Court emphasized in support of its holding underscore § 285 actions: the statute deters filing of "exceptional" cases—those "that stand[] out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness*, 134 S. Ct. at 1756.

Raniere has not persuasively explained why we should make a distinction between § 285 and other statutory provisions that award attorney fees to "prevailing parties," and we see no reason to make such a distinction in light of the Supreme Court's clear command to construe the term "prevailing party" consistently across fee-shifting regimes. We hold *CRST* applies to our analysis of

---

[1] Other circuits also have applied *CRST* to conclude that a defendant need not prevail on the merits to be a "prevailing party." *See LeFande v. Mische-Hoeges*, 712 F. App'x 9, 11 (D.C. Cir. 2018); *In re Nat. Gas Royalties Qui Tam Litig.*, 845 F.3d 1010, 1025–26 (10th Cir. 2017); *United States v. Thirty-two thousand eight hundred twenty dollars & fifty-six cents ($32,820.56) in United States Currency*, 838 F.3d 930, 936 (8th Cir. 2016).

RANIERE v. MICROSOFT CORPORATION                    15

prevailing-party status under § 285, and that defendants need not prevail on the merits to be classified as a "prevailing party." To the extent inconsistent with this conclusion, our prior case law to the contrary—*Inland Steel* and its progeny—is abrogated accordingly.

Even if the district court's decision to dismiss with prejudice for lack of standing is not based on the substantive merits of a plaintiff's case, *CRST* makes clear that a merits decision is not required. Appellees spent significant time and resources to prevail in this action, as reflected by their request for attorney fees and costs. And here, Appellees "won" through the court's dismissal of Raniere's case with prejudice—they prevented Raniere from achieving a material alteration of the relationship between them, based on a decision marked by "judicial *imprimatur*." *CRST*, 136 S. Ct. at 1646. Appellees received all relief to which they were entitled. The district court's findings entitle Appellees to a finding that they have prevailed in this litigation, such that an award of attorney fees would be appropriate.

Even without the benefit of *CRST*'s clarification of *Buckhannon*, moreover, we still would conclude that the district court did not err in finding that Appellees are prevailing parties. The district court's dismissal *with prejudice* of Raniere's infringement suit was tantamount to a decision on the merits, making it sufficient to establish Appellees as prevailing parties.

Raniere objects to this conclusion, arguing that *Varian* makes clear that a dismissal for lack of standing is not an adjudication on the merits under Rule 41(b). But *Varian* examined whether dismissal with prejudice is appropriate when jurisdictional defects exist, and explained that "a dismissal for lack of standing should generally be without prejudice, particularly when the defect is curable." 569 F.3d at 1332. *Varian* did not hold that a dismissal with prejudice is never appropriate in

16                      RANIERE v. MICROSOFT CORPORATION

such circumstances, however.   Here, the district court found explicitly that the standing defect was unlikely to be curable, based on Raniere's repeated failures to correct the defect. *Fees Decision*, 2016 WL 4626584, at *4.  The district court also based its decision to dismiss the matter with prejudice on Raniere's pattern of delay and "contumacious conduct."   *Id.*   This case is, thus, materially distinguishable from *Varian* because the dismissal here was *with prejudice*.[2]

As we noted in *Highway Equipment Co. v. FECO, Ltd.*, a voluntary dismissal with prejudice under Federal

───────────────

[2]   To the extent Raniere's objection to the district court's prevailing party determination relies on a dispute with the district court's dismissal of his case with prejudice, Raniere cannot challenge that finding at this stage of the proceeding—we have already affirmed that finding in the appeal of the merits proceeding. *Raniere*, 673 F. App'x at 1008.  Even if we could review this determination, we have explained on numerous occasions that, where standing cannot be cured, a dismissal with prejudice is appropriate.  *See, e.g., Fieldturf, Inc. v. Sw. Recreational Indus.*, 357 F.3d 1266, 1269 (Fed. Cir. 2004) ("Ordinarily, dismissal for lack of standing is without prejudice.  On occasion, however, a dismissal with prejudice is appropriate, especially where it is plainly unlikely that the plaintiff will be able to cure the standing problem." (internal citations, quotation marks, and alterations omitted)); *Sicom Sys. Ltd. v. Agilent Techs. Inc.*, 427 F.3d 971, 980 (Fed. Cir. 2005) (affirming district court's dismissal with prejudice because the suit "was Sicom's second suit that was dismissed for lack of standing" and "Sicom already had a chance to cure the defect and failed"); *Textile Prods., Inc. v. Mead Corp.*, 134 F.3d 1481, 1484–85 (Fed. Cir. 1998) (affirming district court's dismissal with prejudice because the standing defect was unlikely to be cured).

RANIERE v. MICROSOFT CORPORATION                    17

Rule of Civil Procedure 41(a)(2) "has the necessary judicial imprimatur to constitute a judicially sanctioned change in the legal relationship of the parties, such that the district court properly could entertain [the defendant's] fee claim under 35 U.S.C. § 285." 469 F.3d 1027, 1035 (Fed. Cir. 2006). And in *Power Mosfet Technologies, LLC v. Siemens AG*, where the plaintiff voluntarily dismissed one defendant from the case with prejudice, we concluded that the district court erred in not finding that defendant to be a prevailing party as to Federal Rule of Civil Procedure 54 costs.[3] 378 F.3d 1396, 1416 (Fed. Cir. 2004). There, we stated that "[t]he dismissal of a claim with prejudice, however, is a judgment on the merits under the law of the Federal Circuit." *Id.* (citing *Hallco Mfg. Co. v. Foster*, 256 F.3d 1290, 1297 (Fed. Cir. 2001)).

Raniere objects, but does not explain why this principle would not apply to dismissals under Rule 41(b). To the contrary, the Supreme Court has explained, in the context of discussing the differences between Rule 41(a) and Rule 41(b), that "an 'adjudication upon the merits' is the opposite of a 'dismissal *without prejudice*.'" *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 505 (2001) (emphasis added). *Semtek* cites to Wright & Miller for the propositions that "[b]oth parts of Rule 41 . . . use the phrase 'without prejudice' as a contrast to adjudication on the merits," *id.* (citing 18 Wright, Miller, & Cooper, *Federal Practice & Procedure* § 4435, at 329 n.4 (1981)), and that "'with prejudice' is an acceptable form of shorthand for 'an adjudication upon the merits,'" *id.* (citing 9 Wright, Miller, & Cooper, *Federal Practice & Procedure* § 2373, at 396 n.4 (1981)). As Wright & Miller

---

[3]    We have treated the prevailing party issue under Rule 54 and § 285 in a similar fashion. *See Highway Equip. Co.*, 469 F.3d at 1035; *see also Inland Steel*, 364 F.3d at 1319–20.

explains with respect to awarding costs to the prevailing party, "dismissal of the action, whether on the merits or not, generally means [the] defendant is the prevailing party," and "[a] party who is only partially successful also can be deemed a prevailing party." 10 Wright, Miller & Kane, *Federal Practice and Procedure* § 2667 (3d ed. 2002); *cf. Schwarz v. Folloder*, 767 F.2d 125, 129–30 (5th Cir. 1985) ("Dismissal of an action with prejudice is a complete adjudication of the issues presented by the pleadings and is a bar to a further action between the parties. An adjudication in favor of the defendants, by court or jury, can rise no higher than this." (quoting *Smoot v. Fox*, 340 F.2d 301, 303 (6th Cir. 1964))).

The district court's dismissal with prejudice of Raniere's action gave Appellees the full relief to which they were legally entitled. Thus, to the extent any relief on the merits remains a necessary predicate to prevailing-party status after *CRST*, the dismissal with prejudice here was such a judgment. This suffices to make Appellees "prevailing parties."

For these reasons, we conclude the district court did not err in finding Appellees are "prevailing parties" for the purposes of § 285. We affirm this determination accordingly.

### B. The District Court Did Not Abuse Its Discretion in Finding This Case "Exceptional"

Raniere also contends that the district court abused its discretion in finding this case exceptional. We disagree, and affirm the district court's well-reasoned determination on this issue. Many of Raniere's objections to the district court's exceptionality determination raise factual disputes with the underlying merits ruling, which we cannot review at this stage of the proceeding. The attorney fee award is separately appealable here, and thus collateral, because it cannot "alter the [merits] order or moot or revise decisions embodied in the [merits]

RANIERE v. MICROSOFT CORPORATION                                    19

order." *Budinich v. Becton Dickinson & Co.*, 486 U.S. 196, 199 (1988).

The district court specifically found that Raniere's behavior throughout the litigation employed "a pattern of obfuscation and bad faith," and that this behavior caused Appellees to incur significant fees and costs to oppose Raniere's positions. These positions, in the district court's view, "were made in bad faith to vexatiously multiply these proceedings and avoid early dismissal"—in effect, to stall the termination of the proceedings. *Fees Decision*, 2016 WL 4626584, at *5. "Because the district court lives with the case over a prolonged period of time, it is in a better position to determine whether a case is exceptional and it has discretion to evaluate the facts on a case-by-case basis." *SFA Sys., LLC v. Newegg Inc.*, 793 F.3d 1344, 1351 (Fed. Cir. 2015) (internal quotations, alterations, and citations omitted). The district court properly examined the totality of the circumstances in this case and found the case to be exceptional. We see no reason to disturb the district court's well-reasoned determination.

Raniere requests that, if we affirm the district court's finding of exceptionality, we reduce the amount of the fee and costs award. We conclude, however, that the district court's discretionary determination of fees and costs is well-supported and reflects the court's careful consideration of the relevant billing rates, invoices, and records. The district court explicitly found that various time entries to which Raniere objected were "not block billed, or so vague or unintelligible as to prevent meaningful review." J.A. 30. The district court exercised its discretion in electing to not accept Appellees' fee request in its entirety—it made modifications to the lodestar for duplication in effort between Microsoft and AT&T's lawyers, and it also declined to allow Appellees to recover all requested fees and costs. J.A. 30–33. On this record, we decline to modify the district court's discretionary award.

20                          RANIERE v. MICROSOFT CORPORATION

CONCLUSION

For the foregoing reasons, we affirm the district court's award of attorney fees and costs under 35 U.S.C. § 285.

**AFFIRMED**

COSTS

Costs to Appellees.

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## *Questions and Answers*

## Petitions for Rehearing (Fed. Cir. R. 40)
## and
## Petitions for Hearing or Rehearing En Banc (Fed. Cir. R. 35)

---

*Q. When is a petition for rehearing appropriate?*

A. Petitions for panel rehearing are rarely successful because they most often fail to articulate sufficient grounds upon which to grant them. For example, a petition for panel rehearing should not be used to reargue issues already briefed and orally argued; if a party failed to persuade the court on an issue in the first instance, a petition for panel rehearing should not be used as an attempt to get a second "bite at the apple." This is especially so when the court has entered a judgment of affirmance without opinion under Fed. Cir. R. 36.  Such dispositions are entered if the court determines the judgment of the trial court is based on findings that are not clearly erroneous, the evidence supporting the jury verdict is sufficient, the record supports the trial court's ruling, the decision of the administrative agency warrants affirmance under the appropriate standard of review, or the judgment or decision is without an error of law.

*Q. When is a petition for hearing or rehearing en banc appropriate?*

A. En banc decisions are extraordinary occurrences. To properly answer the question, one must first understand the responsibility of a three-judge merits panel of the court. The panel is charged with deciding individual appeals according to the law of the circuit as established in the court's precedential opinions. While each merits panel is empowered to enter precedential opinions, the ultimate duty of the court en banc is to set forth the law of the Federal Circuit, which merit panels are obliged to follow.

Thus, as a usual prerequisite, a merits panel of the court must have entered a precedential opinion in support of its judgment for a suggestion for rehearing en banc to be appropriate. In addition, the party seeking rehearing en banc must show that either the merits panel has failed to follow identifiable decisions of the U.S. Supreme Court or Federal Circuit precedential opinions or that the merits panel has followed circuit precedent, which the party seeks to have overruled by the court en banc.

*Q. How frequently are petitions for rehearing granted by merits panels or petitions for rehearing en banc accepted by the court?*

A. The data regarding petitions for rehearing since 1982 shows that merits panels granted some relief in only three percent of the more than 1900 petitions filed. The relief granted usually involved only minor corrections of factual misstatements, rarely resulting in a change of outcome in the decision.

En banc petitions were accepted less frequently, in only 16 of more than 1100 requests. Historically, the court itself initiated en banc review in more than half (21 of 37) of the very few appeals decided en banc since 1982. This sua sponte, en banc review is a by-product of the court's practice of circulating every precedential panel decision to all the judges of the Federal Circuit before it is published. No count is kept of sua sponte, en banc polls that fail to carry enough judges, but one of the reasons that virtually all of the more than 1100 petitions made by the parties since 1982 have been declined is that the court itself has already implicitly approved the precedential opinions before they are filed by the merits panel.

*Q. Is it necessary to have filed either of these petitions before filing a petition for certiorari in the U.S. Supreme Court?*

A. No. All that is needed is a final judgment of the Court of Appeals. As a matter of interest, very few petitions for certiorari from Federal Circuit decisions are granted. Since 1982, the U.S. Supreme Court has granted certiorari in only 31 appeals heard in the Federal Circuit.  Almost 1000 petitions for certiorari have been filed in that period.

October 20, 2016

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

## INFORMATION SHEET

## FILING A PETITION FOR A WRIT OF CERTIORARI

There is no automatic right of appeal to the Supreme Court of the United States from judgments of the Federal Circuit. You must file a petition for a writ of certiorari which the Supreme Court will grant only when there are compelling reasons. (See Rule 10 of the Rules of the Supreme Court of the United States, hereinafter called Rules.)

**Time.** The petition must be filed in the Supreme Court of the United States within 90 days of the entry of judgment in this Court or within 90 days of the denial of a timely petition for rehearing. The judgment is entered on the day the Federal Circuit issues a final decision in your case. [The time does not run from the issuance of the mandate, which has no effect on the right to petition.] (See Rule 13 of the Rules.)

**Fees.** Either the $300 docketing fee or a motion for leave to proceed in forma pauperis with an affidavit in support thereof must accompany the petition. (See Rules 38 and 39.)

**Authorized Filer.** The petition must be filed by a member of the bar of the Supreme Court of the United States or by the petitioner representing himself or herself.

**Format of a Petition.** The Rules are very specific about the order of the required information and should be consulted before you start drafting your petition. (See Rule 14.) Rules 33 and 34 should be consulted regarding type size and font, paper size, paper weight, margins, page limits, cover, etc.

**Number of Copies.** Forty copies of a petition must be filed unless the petitioner is proceeding in forma pauperis, in which case an original and ten copies of the petition for writ of certiorari and of the motion for leave to proceed in forma pauperis. (See Rule 12.)

**Where to File.** You must file your documents at the Supreme Court.

**Clerk**
**Supreme Court of the United States**
**1 First Street, NE**
**Washington, DC 20543**
**(202) 479-3000**

No documents are filed at the Federal Circuit and the Federal Circuit provides no information to the Supreme Court unless the Supreme Court asks for the information.

**Access to the Rules.** The current rules can be found in Title 28 of the United States Code Annotated and other legal publications available in many public libraries.

Revised December 16, 1999